# IN THE SUPREME COURT OF TEXAS

No. 17-0329

HARRIS COUNTY, TEXAS, PETITIONER,

v.

LORI ANNAB, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

**Argued March 1, 2018**

JUSTICE BLACKLOCK delivered the opinion of the Court.

On November 14, 2011, Kenneth Caplan shot Lori Annab in a fit of road rage. Caplan was a Harris County deputy constable, but he was off duty when he committed this vicious crime. He fired his personal firearm from his personal vehicle, striking and injuring Annab. Caplan is now in prison serving a twenty-year sentence. These facts are undisputed.

Although Caplan was off duty and used his personal firearm in the assault, Annab sued Harris County, Caplan's employer. Invoking the Texas Tort Claims Act, Annab attempted to overcome Harris County's governmental immunity by claiming that Harris County used tangible personal property when Caplan shot Annab. The trial court granted the county's plea to the jurisdiction and dismissed the case. The court of appeals concluded that Annab had not established a waiver of governmental immunity but remanded the case to allow Annab to replead and conduct

1

more discovery. We agree with the court of appeals that Annab has not established a waiver of governmental immunity because her allegations, taken as true, do not demonstrate that Harris County's use of tangible personal property caused her injuries. We disagree, however, with the court of appeals' decision to remand the case. Despite multiple opportunities to do so, Annab has identified no viable factual or legal theory under which she could overcome the county's immunity on remand, and we can conceive of none. Remand was therefore improper. We affirm the judgment of the court of appeals in part, reverse in part, and render judgment for Harris County.

## I. Background

Annab sued Harris County in October 2015. Attempting to trigger the Tort Claims Act's limited waiver of governmental immunity, she alleged that Harris County's use of tangible personal property caused the injuries she suffered when Caplan shot her. The alleged use of tangible personal property was the county's decision to hire Caplan and "repeatedly approv[e]/authoriz[e] and qualify[] [Caplan] to have, possess, and use the Glock gun as a firearm." The county responded with a plea to the jurisdiction. The county made three arguments: (1) Annab's claims were excluded from the Tort Claims Act's immunity waiver because they arose from Caplan's intentional assault, (2) the use or misuse of information was not the "use of tangible personal property" under the Tort Claims Act, and (3) Caplan did not act within the scope of his employment, so "[n]o county property was used." The trial court permitted additional discovery into these issues prior to ruling on the plea to the jurisdiction. Annab deposed the county's representative, Deputy Chief Armando Tello, before the court granted the county's plea and dismissed the case.

2

Annab filed an interlocutory appeal. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8). The court of appeals found that Annab's allegations regarding the county's "use" of the firearm failed to establish a waiver of the county's immunity. *Annab v. Harris Cty.*, 524 S.W.3d 793, 803–05 (Tex. App.—Houston [14th Dist.] 2017, pet. granted). Further, the court of appeals found that any alleged use was not a proximate cause of Annab's injuries. *Id.* But the court of appeals remanded the case to the trial court to allow Annab to replead and conduct more discovery. *Id.* One justice dissented. The dissent argued that Annab's claims arose from an intentional tort and were therefore excluded from the Tort Claims Act, regardless of whether she sufficiently alleged the county's use of tangible personal property. *Id.* at 805–08 (Donovan, J., dissenting).

## II.    Analysis

Sovereign immunity and governmental immunity are related common law doctrines protecting the government from suit. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011). "Sovereign immunity protects the state and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts." *Id.*; *see also Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). An assertion of governmental immunity "implicates courts' subject-matter jurisdiction." *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 91 (Tex. 2012). Thus immunity "is properly asserted in a plea to the jurisdiction." *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004).

Subject matter jurisdiction is a question of law that we review de novo. *Id.* at 226. When considering whether the pleadings allege jurisdiction, we "require[] the pleader to allege facts that affirmatively demonstrate the court's jurisdiction." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852

S.W.2d 440, 446 (Tex. 1993). "When reviewing a trial court order dismissing a cause for want of jurisdiction, Texas appellate courts 'construe the pleadings in favor of the plaintiff and look to the pleader's intent.'" *Id.* (quoting *Huston v. FDIC*, 663 S.W.2d 126, 129 (Tex. App.—Eastland 1983, writ ref'd n.r.e.)).

A governmental unit such as Harris County may be sued if the Legislature has waived immunity in "clear and unambiguous language." TEX. GOV'T CODE § 311.034; *Oncor Elec. Delivery Co. v. Dall. Area Rapid Transit*, 369 S.W.3d 845, 849 (Tex. 2012) ("[A] waiver of governmental immunity must be clear and unambiguous."). The Tort Claims Act waives immunity for certain tort claims against governmental units, including claims for "personal injury . . . caused by a condition or use of tangible personal . . . property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2); *see also id.* § 101.025(a) ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter."). Annab does not contend that her injuries were caused by a "condition" of tangible personal property. Thus, to invoke section 101.021(2)'s waiver of immunity, Annab must allege that the county's "*use* of tangible personal property" caused her injuries. *See Texas Ass'n of Bus.*, 852 S.W.2d at 446 (emphasis added).

"[S]ince 1973 we have consistently defined 'use' to mean 'to put or bring into action or service; to employ for or apply to a given purpose.' A governmental unit does not 'use' personal property merely by allowing someone else to use it and nothing more. If all 'use' meant were 'to make available,' the statutory restriction would have very little force." *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004); *see also Rusk*, 392 S.W.3d at 98 (holding that "use" does not include "providing, furnishing, or allowing access to tangible property").

4

Annab alleges that the county used Caplan's firearm by authorizing Caplan to use or possess the firearm. This allegation fails as a matter of law to trigger the Tort Claims Act's immunity waiver. Annab's primary allegation of "use" stems from the county's alleged "authorization" or "approval" of *Caplan's* use of his firearm. Stated another way, Annab alleges the county "made available" the firearm to *Caplan*, which *he* then *used* to cause her injuries. The allegation that the county made the firearm available to Caplan is at odds with the undisputed facts, as explained below. But even accepting the allegation at face value, Annab has not alleged "use" of the firearm by the county under the Tort Claims Act. We consistently have defined "use" to be more than making tangible personal property available for use by another. To use something, the governmental unit must "put [it] or bring [it] into action or service [or] employ [it] for or apply [it] to a given purpose." *Cowan*, 128 S.W.3d at 246. For the government to "use" tangible personal property, "the governmental unit [must] itself [be] the user," *id.*, and "the injury must be contemporaneous with the use of the tangible personal property." *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 389 (Tex. 2016). Annab's allegation that the county enabled, authorized, or approved Caplan's use of the firearm does not amount to an allegation that the county used the firearm. This allegation therefore does not trigger the Tort Claims Act's waiver of immunity.

Annab also attempts to overcome Harris County's immunity by alleging that the county's various administrative decisions regarding Caplan's employment amount to the "use of tangible personal property." Annab points to Caplan's troubled employment history before and during his time as a constable. She alleges that Caplan's bad acts prior to and during his employment demonstrate that the county should not have hired Caplan, should have fired Caplan, or should have withdrawn its authorization for him to possess his firearm while on duty. Although these

5

allegations have little to do with the county's liability under the Tort Claims Act, they demonstrate that Caplan's record may not have made him the ideal candidate to be a peace officer. Caplan disclosed on his application that he had been fired from 12 of 21 prior jobs, that he was dismissed from the police academy for bad behavior, and that he required mood stabilizing medications. According to Annab, the county failed to investigate these events prior to hiring Caplan as a deputy constable and authorizing him to use his firearm while on duty. During his employment with the county, Caplan had two reported incidents of road rage. Annab complains that despite these acts, Caplan was neither terminated from employment nor prohibited from carrying his firearm during his duties.

In a different case, these allegations could have some relevance to a claim against a private employer. But Harris County is not a private employer. It is immune from suits such as Annab's unless the Legislature waives its immunity. The Legislature has chosen to waive the county's governmental immunity only in limited circumstances. *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex. 1996) (noting that the Tort Claims Act did not "abolish[] governmental immunity" but was a "limited waiver [by] the Legislature"). The only waiver of immunity Annab alleges is the Tort Claims Act's waiver for the county's "use of tangible personal property." Under our precedent and the plain text of the Tort Claims Act, the county's failure to take action based on information it knew or should have known about its employee is not the "use of tangible personal property." "We have long held that information is not tangible personal property, since it is an abstract concept that lacks corporeal, physical, or palpable qualities." *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001); *see also Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 178 (Tex. 1994) ("[T]angible personal property refers to something that has a

6

corporeal, concrete, and palpable existence."). We have also held that complaints about employment decisions allege the use or non-use of information, not the use of tangible personal property. *See Tex. Dep't of Criminal Justice v. Campos*, 384 S.W.3d 810, 815 (Tex. 2012) (holding that a state agency's failure to properly screen, hire, train, supervise, and discipline employees who later committed assault while employed by the state agency was misuse of information, not of tangible personal property). We reject Annab's claim that the county's use or non-use of information regarding Caplan's fitness to serve as a constable or to possess his personal firearm establishes a waiver of immunity under the Tort Claims Act.

Further, non-use is by definition not use. "It is well settled that mere nonuse of property does not suffice to invoke section 101.021(2)'s waiver. If it did, governmental immunity 'would be rendered a nullity,' because '[i]t is difficult to imagine a tort case which does not involve the use, or nonuse, of some item of real or personal property.'" *City of N. Richland Hills v. Friend*, 370 S.W.3d 369, 372 (Tex. 2012) (quoting *Kerrville State Hosp.*, 923 S.W.2d at 586). The county's failure to use information when it hired Caplan, retained Caplan as an employee, and declined to revoke the authorization for his on-duty possession of a firearm, cannot be the "use of tangible personal property."

In addition to their legal insufficiency, Annab's claims proceed from an untenable factual premise. Even if the county making the firearm available to Caplan were enough to waive the county's immunity—and it is not—the record demonstrates that the county did not make the firearm available to Caplan. Annab admits that Harris County does not issue firearms to deputy constables. Annab also admitted before the court of appeals that Caplan owned the firearm prior to his employment with the county. *Annab*, 524 S.W.3d at 801–02. There is no dispute that Caplan

7

procured the firearm independently of the county. He possessed it and had the ability to use it criminally against Annab irrespective of his employment. Even accepting Annab's allegations as true, there is no factual basis for the notion that the county made the firearm available to Caplan.

Annab argues repeatedly that, but for the county's approval and authorization, Caplan would not have been able to carry and use his personal firearm. As explained above, approval and authorization does not constitute "use of tangible personal property" under our precedent, which requires the county be the user of the tangible personal property at the time of the injury. But in any event, Annab has not articulated how Caplan's right to possess his personal firearm on his personal time was dependent on the county's approval. *See* U.S. CONST. amend II; TEX. CONST., art. I, § 23. The county's policy on deputy constables' use of personal firearms actually functions in the opposite fashion; it assumes the deputy constable has the right to carry his personal firearm while off duty but attempts to impose controls on what kind of firearm deputy constables may carry. The policy also prohibits the carrying of a firearm to "locations where the primary business activity is the service of alcoholic beverages" and generally urges constables to exercise discretion when deciding where they carry their off duty firearm. The county's maintenance of this generic off duty firearms policy for all its deputy constables does not amount to approval or authorization of everything an individual deputy constable does with his personal firearm while off duty.

Despite this, Annab claims that Deputy Chief Tello admitted at his deposition that without the county's authorization Caplan could not have kept his firearm. But this testimony was cabined to Caplan's possession of the firearm during his duties as a constable. Certainly the county could have prevented Caplan from possessing or using the firearm while on duty. But the shooting

8

occurred when Caplan was off duty. Tello testified at his deposition that the county's policies do

not affect Caplan's right to carry a firearm while off duty:

> Q. In reference to the authorization to use firearms, what is the purpose of authorizing a firearm?
> A. First of all, we want to ensure that the deputy can show proficiency with the weapon, the approved weapon, for conducting his job.
> Q. Is the authorization a license to carry that firearm?
> A. No, sir.
> Q. Does it have any effect on Mr. Caplan's or any other deputy's legal right to carry a firearm?
> A. No, sir.

In sum, Annab's allegations that the county made the firearm available to Caplan and authorized

or approved his possession and use of it are both legally insufficient and factually unsupportable.

These allegations do not establish a waiver of immunity under the Tort Claims Act.

\* \* \*

We turn next to whether the court of appeals correctly remanded the case to afford Annab

the opportunity to replead and conduct further discovery. As explained below, we conclude that

remand was improper, and we render judgment for the county.

When a defendant raises a jurisdictional argument for the first time on appeal, remand may

be appropriate to afford the plaintiff a "fair opportunity to address" the jurisdictional argument.

*Rusk*, 392 S.W.3d at 96; *see also RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 429 (Tex. 2016)

(citing *Rusk* in ordering remand where standing was raised for the first time on appeal). However,

if the party who raised the jurisdictional defense can show that "the pleadings or record . . .

conclusively negate the existence of jurisdiction," or that the plaintiff did in fact have a "full and

fair opportunity in the trial court to develop the record and amend the pleadings," or that even with

9

a remand "the plaintiff would be unable to show the existence of jurisdiction," then the case should be dismissed without a remand. *Id*. at 96–97.

The court of appeals remanded the case because it determined that the county raised arguments regarding the proper understanding of "use" under the Tort Claims Act for the first time on appeal. *Annab*, 524 S.W.3d at 805. To begin with, the record does not indicate that the county waited until the appeal to raise this issue. To the contrary, the county's plea to the jurisdiction twice argued that the county did not use tangible personal property. The county argued that "claims arising from the misuse or failure to use information do not waive a governmental entity's sovereign immunity," and that "[n]o county property was used during the commission of Defendant Caplan's crime." But even assuming these arguments were not raised until appeal, new arguments alone do not entitle the plaintiff to replead and conduct further discovery. Under *Rusk*, a remand should be denied if "the plaintiff would be unable to show the existence of jurisdiction" on remand. *Rusk*, 392 S.W.3d at 96. That is the case here. Despite multiple opportunities in briefing and at oral argument to articulate a legal or factual theory under which Harris County's use of tangible personal property caused Annab's injuries, Annab's counsel could not do so. This is not surprising. Caplan shot Annab with his personal firearm while off duty. Annab does not dispute this. Even accepting Annab's allegations as true, the county did not provide the firearm to Caplan and had no involvement in his use of it against Annab. We can envision no other facts— and Annab's counsel has offered none—that when combined with these undisputed facts would establish that Harris County's "use of tangible personal property" caused Annab's injuries. Because no amount of future discovery or rephrasing of the allegations could properly invoke the Tort Claims Act's limited waiver of the county's immunity, remand serves no purpose.

10

Finally, we note that remand may also be appropriate when the plaintiff did not have a "full and fair opportunity in the trial court to develop the record." *Id.* Here, the trial court allowed discovery into the relevant issues, including allowing Annab to take the deposition of a representative for the county. In that deposition, Annab and the county both asked questions regarding the county's alleged "use of tangible personal property." This provided sufficient development of the record. No amount of discovery or repleading could result in Annab establishing Harris County's liability for Caplan's off duty criminal act. Remand was therefore inappropriate.

### III. Conclusion

Annab's allegations fail to trigger the Tort Claims Act's waiver of Harris County's governmental immunity. Neither further discovery nor repleading could cure this defect. We affirm the judgment of the court of appeals in part, reverse in part, and render judgment for Harris County.[1]

James D. Blacklock
Justice

**OPINION DELIVERED:** May 11, 2018

---

[1] The county also argued that the Tort Claims Act's waiver of immunity does not apply to claims arising from Caplan's intentional assault, TEX. CIV. PRAC. & REM. CODE § 101.057(2) (exempting claims "arising out of assault . . . or any other intentional tort" from liability), and that the alleged use of tangible personal property by the county was not a proximate case of Annab's injuries. Our holding that Annab cannot successfully allege that the county used tangible personal property fully disposes of the case. We need not decide whether Annab's allegations also suffer from other defects.