**Affirmed and Memorandum Opinion filed September 18, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00183-CV

## APTBP, LLC D/B/A BAY POINTE APARTMENTS AND GATESCO, INC., Appellants

## V.

## THE CITY OF BAYTOWN, Appellee

**On Appeal from the County Civil Court at Law No. 3**
**Harris County, Texas**
**Trial Court Cause No. 1079024**

## M E M O R A N D U M      O P I N I O N

APTBP, LLC d/b/a Bay Pointe Apartments and Gatesco, Inc. (collectively, "APTBP") appeal an order granting the City of Baytown's plea to the jurisdiction and dismissing their claim with prejudice. APTBP contends the trial court erroneously granted the City's plea to the jurisdiction because it pleaded sufficient facts to establish an inverse condemnation claim. We affirm.

BACKGROUND

APTBP, LLC has owned Bay Pointe Apartments in Baytown since 2014; GATESCO is a property management company. APTBP, LLC purchased Bay Pointe Apartments located in Baytown in 2014. The apartment complex was still damaged by Hurricane Ike when APTBP, LLC purchased it. APTBP, LLC started repairing the buildings in the complex after the purchase. A dispute arose when the City allegedly refused to release electricity to repaired, vacant units in the apartment complex.

APTBP filed a suit alleging a claim for inverse condemnation/regulatory taking under Article 1, section 17 of the Texas Constitution against the City on June 16, 2016. APTBP alleged that it lost rental income on vacant, move-in ready apartment units when the City "abruptly ceased releasing 'holds' on units of the [c]omplex that have been rehabbed and which could be leased out." APTBP alleged that the City "arbitrarily decided" that Bay Pointe could not receive electricity until the "entire apartment complex obtains a new final Certificate of Occupancy (which is impossible without electric power)" while no "other complex has this requirement, and [Bay Pointe] did not have this requirement until recently."

The City filed an "Answer, Plea to the Jurisdiction, and Counterclaim" on July 8, 2016. The City pleaded the affirmative defense of governmental immunity; asserted the court lacked subject matter jurisdiction because the facts APTBP pleaded are insufficient to establish a viable takings claim under the Texas Constitution; and pleaded a "counterclaim for civil penalties and injunctive relief under Subchapter B of Chapter 54 of the Texas Local Government Code" for violation of the City's Code of Ordinances.

The City filed a brief in support of its plea to the jurisdiction on February 9, 2017. The City alleged that APTBP, LLC purchased Bay Pointe in May 2014, and

started renovating the complex because multiple buildings were vacant and there was significant damage to the common areas. The City alleged it conducted several inspections of Bay Pointe, but the complex did not meet the minimum requirements to obtain a certificate of occupancy as required by the City of Baytown Code of Ordinances. At some point, the City's chief building official placed electric meter holds on vacant units at Bay Pointe and informed APTBP that the holds would be released once a certificate of occupancy was obtained. The City released the holds in August 2016 after APTBP agreed to repair the common areas. According to the City, it issued a certificate of occupancy after the repairs were made; APTBP then leased the vacant units. In its brief, the City argued that APTBP failed to plead a takings claim to overcome its immunity. The City also argued that GATESCO lacked standing to sue the City because a cause of action for an injury to property belongs to the owner of the property, and GATESCO never owned Bay Pointe; instead, APTBP, LLC is the sole owner of Bay Pointe since May 2014 and has standing.

APTBP filed a response to the City's plea to the jurisdiction brief on March 1, 2017, arguing that the City misapplied its ordinances and the International Building Code and arbitrarily denied electric power to repaired, vacant apartment units at Bay Pointe, "which resulted in economic waste and the deterioration and decay of those apartment units affected, and the loss of rental income." APTBP also argued that the City misapplied the Code of Ordinances' standards and regulations to APTBP, LLC and Bay Pointe, "which are not applied to other owners" or other apartment "complexes in the City."

APTBP filed a "supplement" to its original petition on March 1, 2017, which contained additional allegations to conform to the particular arguments APTBP made in its response to the City's brief. APTBP alleged it was "unable to obtain

3

electric power for [its] units (which are eligible for power pursuant to Code) due to the City's arbitrary and capricious conduct . . . which resulted in economic waste and the deterioration and decay of those apartment units affected, and the loss of rental income." APTBP prayed for "[e]conomic damages due to inverse condemnation/regulatory taking in the form of lost rents" and "destruction/cost to repair/loss of value of individual units."

The City filed a reply to APTBP's response to the plea to the jurisdiction on March 3, 2017, arguing that the City retained its immunity from suit because APTBP failed to allege facts to prove a compensable taking occurred in this case. Among others, the City contended that APTBP's allegation that it "misapplied requirements of its safety ordinances by setting the bar to obtain the operating permit impossibly high" cannot support a compensable taking claim because an objection to the infirmity of the City's process of ordering units to remain vacant is not enough to prove a compensable taking.

The trial court held a hearing on the City's plea to the jurisdiction on March 6, 2017. After the hearing, the trial court signed an order on March 6, 2017, granting the City's plea to the jurisdiction and dismissing APTBP's claim against the City with prejudice. The trial court did not rule on the City's counterclaim. APTBP filed a timely interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (a)(8) (Vernon 2017) (A person may appeal from an interlocutory order that grants or denies a plea to the jurisdiction by a governmental unit.).

## ANALYSIS

APTBP argues that the trial court erred by granting the City's plea to the jurisdiction because it has "pleaded facts which affirmatively demonstrate a facially valid takings claim." APTBP argues that the City's misapplication of its standards and regulations with regard to APTBP's property unreasonably interfered with the

4

use and enjoyment of property and has violated APTBP's rights under Article 1, section 17 of the Texas Constitution. According to APTBP, it has a viable takings claim because the City's misapplication of ordinances and wrongful denial of access to electricity (1) prevented APTBP from renting repaired apartment units, causing loss of rental income; and (2) created economic waste because APTBP's apartment units deteriorated without air-conditioning.

## I.   Standard of Review

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Whether a trial court has subject matter jurisdiction is a question of law. *Harris Cty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018). We therefore review the trial court's ruling on a plea to the jurisdiction *de novo*. *See id*.

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *See id*. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id*. at 612-13. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004). If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id*. at 227.

## II.   Takings Claim

A municipal government enjoys immunity from suit unless its immunity has

5

been waived. *City of Houston v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014). Without this waiver, courts have no jurisdiction to adjudicate a claim against the municipality. *Id*. The Texas Constitution waives governmental immunity with regard to inverse condemnation claims. *Id*. at 830; *see also Harris Cty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 799 (Tex. 2016) ("Sovereign immunity does not shield the government from liability for compensation under the takings clause."). Such claims must be predicated on a viable allegation of taking. *Carlson*, 451 S.W.3d at 830. In the absence of a properly pleaded takings claim, the government retains immunity, and a court must sustain a properly raised plea to the jurisdiction. *Id*.

The preservation of private property rights is "'one of the most important purposes of government.'" *See id*. at 831 (quoting *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140 (Tex. 1977)). But the government also has other obligations, including ensuring the safety and security of its citizens. *Id*. "To satisfy its responsibilities, government often imposes restrictions on the use of private property." *Id*. Even though these restrictions can result in inconvenience to owners, the government generally is not required to compensate an owner for associated loss. *Id*. When a property owner believes compensation is due for his loss, he may seek redress via an inverse condemnation claim. *Id*. To plead an inverse condemnation claim, a plaintiff must allege an intentional government act that resulted in the uncompensated taking of private property. *Id*. "A taking is the acquisition, damage, or destruction of property via physical or regulatory means." *Id*. "A regulatory taking is a condition of use 'so onerous that its effect is tantamount to a direct appropriation or ouster.'" *Id*. (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005)).

Here, APTBP contends that it has suffered a regulatory taking but its

allegations do not support that claim because governmental interference arising from the improper application or misapplication of regulations and standards does not constitute a taking. *See id*. 831-33.

APTBP raised two types of allegations in the trial court: (1) the City's misapplication of its regulations and standards vis-à-vis APTBP, LLC's apartment complex constitutes a taking; and (2) the City's misapplication of its regulations and standards only as to APTBP, LLC's apartment complex, and to no other apartment complexes in Baytown, constitutes a taking. Specifically, APTBP alleged in its pleadings and at the hearing the following acts by the City in support of its takings claim:

- "[T]he City intentionally enforced the City of Baytown Code of Ordinances . . . in an arbitrary, capricious, and discriminatory manner by misapplying requirements to [Appellants] which are not applied to other owners."

- "[T]he Code was misapplied in a manner that made the operating permit (C.O. [Certificate of Occupancy]) impossible to obtain by [APTBP], for example, by refusing electric power to [APTBP] until an operating permit is issued, even though a requirement to obtain the operating permit is first having electric power," so that APTBP is "essentially in a class of one."

- "[T]he City intentionally misapplied the Code to [APTBP], and to no other owner, by setting the bar to obtain the operating permit impossibly high" so that the "standard for [APTBP] was perfection in all aspects of construction."

- "[APTBP] has been saddled with extra-legal requirements that no other owner has . . . ."

- "Withholding electric to an apartment owner is not a means of enforcement under the Code."

7

- "The City . . . intentionally misapplied Sec. 112.1 and Sec. 112.2 of the International Building Code (IBC) to prevent [APTBP] from accessing electrical power, even though [APTBP] had approval under Sec. 18-260 of the City Code to obtain electric power."

- "The City was intentionally applying its code in a wrongful and discriminatory manner, in bad faith, and in retaliation."

- The City "intentionally misapplied a City ordinance."

- The City treated APTBP's apartment complex "differently from every other apartment complex in the City of Baytown. [APTBP] was in a class of one."

- The City "won't release the electric. Only one in the City of Baytown in this situation."

In analyzing whether these contentions rise to the level of a taking, we find instructive the supreme court's analysis in *City of Houston v. Carlson*, 451 S.W.3d at 831-33.

In *Carlson*, an investigation by the City of Houston revealed various alleged structural, electrical, and plumbing problems in a condominium complex. *Id*. at 829. The city declared the condominiums uninhabitable and posted a notice throughout the complex stating (1) the condominium owners had ten days to apply for a certificate of occupancy; and (2) failure to comply with the notice "may subject you to a municipal court citation." *Id*. at 829-30. The owners did not apply for an occupancy certificate or make the requisite repairs. *Id*. at 830. After a month passed without compliance, the city did not issue a citation; instead, it ordered all residents to vacate the complex within 31 days pursuant to a city ordinance that authorized officials to "order the use discontinued immediately" when a structure "creates a serious and immediate hazard." *Id*.

8

The city upheld the order to vacate after an administrative hearing. *Id*. The order to vacate later was reversed by a district court based on due process violations, and the owners sold the complex for redevelopment. *Id*. The owners then filed an inverse condemnation suit, alleging that a taking had occurred when the city forced them to vacate the complex. *Id*. The owners sought compensation for the years of lost use of the complex. *Id*. The trial court granted the city's plea to the jurisdiction, finding the owners did not allege a taking. *Id*. The supreme court agreed. *Id*. at 831-33.

The supreme court concluded that a complaint about the misapplication of the city's safety regulations with regard to the owners' property, or a complaint about the manner in which the city enforced its standards, is not a takings claim. *See id*. at 831-32. The court noted that the owners did not contest any of the city's property-use restrictions; did not argue that it is "unreasonable to require multi-family residential facilities to obtain occupancy certificates;" and did not "challenge the city's electrical, plumbing, or structural standards." *Id*. at 831. Instead, the owners objected only to the "penalty imposed and the manner in which the city enforced its standards," and that the "safety regulations were misapplied vis-à-vis their property." *Id*. at 832. The court concluded that the owners "simply have not alleged a taking," and "the city therefore retains its immunity from suit." *Id*. at 833.

Similar circumstances are present here. APTBP does not challenge any regulations and standards in the City's Code of Ordinances or in the International Building Code. APTBP does not allege that any particular regulations or standards are unreasonable restrictions on the use of the property at issue. Rather, APTBP complains about the City's misapplication or "wrongful" application of certain regulations and standards and the manner in which the City enforced certain standards and regulations in relation to APTBP, LLC's property. Based on *Carlson*,

9

we conclude that APTBP has not alleged a viable regulatory taking. *Id*. at 831-33; *see also Nat'l Media Corp. v. City of Austin*, No. 03-16-00839-CV, 2018 WL 1440454, at *4-6 (Tex. App.—Austin Mar. 23, 2018, no pet.) (mem. op.) ("National Media's pleadings—in complaining of the City's 'illegal' actions in wrongly applying the zoning code to deny sign registration and foreclose a relocation permit—simply do not plead a viable regulatory taking"); *House of Praise Ministries, Inc. v. City of Red Oak*, No. 10-15-00148-CV, 2017 WL 1750066, at *7 (Tex. App.—Waco May 3, 2017, no pet.) (mem. op.) (House of Praise Ministries did not plead a regulatory taking when it did not complain about particular code provisions and challenged only the city's enforcement of code provisions); *CPM Trust v. City of Plano*, 461 S.W.3d 661, 673 (Tex. App.—Dallas 2015, no pet.) (appellants did not plead a taking when they did "not contest the sign regulations in the City's zoning ordinance, but rather complain about the City's misapplication of certain regulations as to their property").

We also conclude that no viable takings claim is presented based on APTBP's allegations that the City misapplied its regulations and standards because it required only APTBP to comply with them, and treated other apartment complex owners in Baytown differently or more leniently. *See Carlson*, 451 S.W.3d at 831-32. Accordingly, we conclude that APTBP has not alleged a taking and the trial court properly granted the City's plea to the jurisdiction with regard to its takings claim.[1]

APTBP further argues that, if its "pleadings lack sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not reveal incurable jurisdictional defects, this Court should afford Plaintiff an opportunity to re-plead."

---

[1] In its plea to the jurisdiction, the City argued that Gatesco lacks standing to bring a takings claim. The trial court granted the City's plea and ordered that "all of Plaintiffs' claims against the City are dismissed, with prejudice, for lack of jurisdiction." Gatesco does not challenge on appeal the trial court's determination that it lacks standing to bring a takings claim.

"Appellate courts generally must remand a case to afford parties an opportunity to cure jurisdictional defects in their pleadings when the parties did not have that opportunity in the first instance because the jurisdictional issue arose the first time on appeal." *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 558-59 (Tex. 2016). "If a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity, then the trial court should dismiss the plaintiff's action." *Sykes*, 136 S.W.3d at 639.

Here, APTBP had and used the opportunity to amend its pleadings in the trial court after the City filed a plea to the jurisdiction. The City also pointed out at the hearing on the plea to the jurisdiction that APTBP had not alleged a takings claim, and APTBP did not amend its pleadings thereafter. APTBP is not entitled to an additional opportunity to replead. *See Marquez*, 487 S.W.3d at 559 (plaintiffs were not entitled to a remand to replead because they already had an opportunity to amend their pleadings after the school district filed a plea to the jurisdiction); *Sykes*, 136 S.W.3d at 639 (plaintiff was not allowed to replead because "the trial court allowed [plaintiff] to file an amended petition, after which the court made a final adjudication"); *Miranda*, 133 S.W.3d at 231 (plaintiffs were not entitled to replead because they had an opportunity to amend their pleadings and did so in the trial court); *Trant v. Brazos Valley Solid Waste Mgmt. Agency, Inc.*, 478 S.W.3d 53, 63 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (plaintiffs were not entitled to an additional opportunity to replead because they amended their petition twice after defendant filed a plea to the jurisdiction and did not amend their petition after a hearing on the plea to the jurisdiction).

Additionally, the right to amend typically arises when the pleadings fail to

allege sufficient facts to demonstrate the trial court's jurisdiction. *See Marquez*, 487 S.W.3d at 559. But the jurisdictional bar here does not arise from a lack of factual allegations; instead, it arises from the nature of APTBP's claims. *See id.* APTBP did not challenge a particular regulation or standard as required for a regulatory taking claim, even though it labeled its claim as a regulatory taking. *See House of Praise Ministries*, 2017 WL 1750066, at *8; *see also Carlson*, 451 S.W.3d at 831-33. Rather, APTBP challenged the City's misapplication of certain regulations and standards, and the manner in which the City enforced certain standards and regulations with regard to APTBP, LLC's property. Allowing APTBP to replead in order to allege additional facts would not help APTBP with regard to a claim for a regulatory taking. APTBP would have to allege an entirely different complaint to properly plead a regulatory taking. *See House of Praise Ministries*, 2017 WL 1750066, at *8 (pleading defect cannot be cured and plaintiff was not entitled to replead because plaintiff did not attack a regulation and only attacked the manner of enforcement of specific regulations; alleging additional facts cannot help plaintiff because plaintiff would have to plead a different complaint to properly allege a regulatory taking); *see also Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) (plaintiff was not entitled to a remand to amend his pleadings because he pleaded the wrong cause of action, and any additional facts in support of that cause of action would not overcome the university's immunity from suit).

We overrule APTBP's issue.

## CONCLUSION

Having overruled APTBP's issue, we affirm the trial court's order granting the plea to the jurisdiction.

/s/    William Boyce
Justices

Panel consist of Justices Boyce, Jamison and Brown.