**Opinion issued March 20, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00806-CV

_____

**CITY OF HOUSTON, Appellant**

**V.**

**ALEXYS SANDOVAL, Appellee**

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-40013**

---

## MEMORANDUM OPINION

Alexys Sandoval sued the City of Houston (City) under the Texas Tort Claims

Act (TTCA) for bodily injury and property damage she allegedly sustained when a

City-owned "run-away" garbage truck struck her house and vehicles parked in her

driveway. The City moved for summary judgment, arguing that the TTCA did not waive its governmental immunity from suit. The trial court denied the motion.

In a single issue with several subparts on appeal, the City argues that it retains immunity from suit because Sandoval's alleged injuries and property damage (1) did not arise from the "operation or use of a motor-driven vehicle" and (2) were not "caused by a . . . use of tangible personal or real property . . . ." *See* TEX. CIV. PRAC. & REM. CODE § 101.021. The City further argues that the TTCA does not waive its immunity for Sandoval's claims of negligent entrustment; negligent maintenance; and negligent hiring, training, and supervision. We affirm in part and reverse and render in part.

## Background

On August 25, 2020, City employee Ronald Cadoree was driving a City-owned garbage truck and collecting waste from roadside bins in a residential neighborhood. While collecting a waste bin with the truck's automatic service arm near Sandoval's home, Cadoree knocked over the bin. He put the truck in neutral gear, engaged the parking brake, and exited the vehicle to pick up the fallen bin. While he was outside the truck, the driverless truck drove forward, went through Sandoval's yard, struck two vehicles parked in her driveway, and struck the exterior wall and roof of her house. Sandoval allegedly sustained bodily injury while sleeping inside the house.

2

Sandoval sued the City under the TTCA for personal injury and property damage resulting from the truck's collision with her home.[1] She alleged that TTCA section 101.021 waived the City's governmental immunity because her injuries arose from (1) the negligent use of a motor vehicle and (2) a condition or use of tangible personal property. *See id.* She asserted claims of negligence and gross negligence.

Sandoval further alleged that the City was "responsible for the hiring, training and work of maintenance [by] commercial garbage truck drivers such as Ronald Cadoree." She alleged that the City "knew or should have known of the unreasonably dangerous condition created by hiring incompetent workers who would operate commercial vehicles on public roadways." Finally, she alleged that the City engaged in thirteen negligent acts or omissions focused on its hiring, training, and supervision of employees; workplace safety; and maintenance of garbage trucks.

The City filed a traditional motion for summary judgment asserting that it was immune from suit. First, the City argued that Sandoval's negligence claims arose from a mechanical malfunction in the garbage truck, which is not operation or use of a motor-driven vehicle sufficient to waive its immunity under section 101.021(1). *See id.* § 101.021(1)(A). Second, the City argued that the TTCA does not waive governmental immunity for Sandoval's claims concerning the City's failure to train

---

[1] Sandoval also sued Cadoree, but she subsequently nonsuited her claims against him.

3

or supervise employees, failure to enforce adequate workplace safety standards, failure to maintain vehicles, and improper hiring.

The City's summary judgment evidence consisted of four documents. A Solid Waste Management Department Safety Representative's Report, which was dated the same day as the incident, stated that Cadoree had knocked over a waste bin with the garbage truck's mechanical service arm. He then "placed the truck in neutral gear, engaged the park[ing] brake, exited the truck and walked around the front of the truck" to pick up the waste bin. While he was outside the truck, it "started to accelerate, jumped into a forward drive gear and began to move forward." Cadoree was unable to stop the truck before it hit Sandoval's house and the vehicles in her driveway. The report "noted that after the truck was pulled away from the house and onto the street" following the collision, "it began to accelerate on its own power again." The report also noted that a Houston Police Department (HPD) officer had inspected the truck, but the result of the inspection was unknown. The report stated that the cause of the incident was "Mechanical Failure" of the truck and that Cadoree was not at fault.

The City also attached two interoffice memoranda from Cadoree's supervisor, which were completed a few days after the collision. The first memo stated that Cadoree was standing outside the truck when "he heard the vehicle accelerating and quickly jump into gear" before traveling forward. This memo stated that "the

4

accident is undetermined. Pending shop investigation." In the second memo, the supervisor summarily determined that Cadoree was not at fault for the collision.

Finally, the City attached a written statement from Cadoree, which was dated the same day as the collision. Cadoree stated that he dropped a waste bin, so he "put the truck in neutral and pop[ped] the park[ing] brake" before exiting the vehicle to pick up the bin. While standing outside the truck, "the truck engine started accelerating and the truck took off."

Sandoval responded to the City's motion. She argued that a fact issue existed concerning whether Cadoree's negligent use or operation of the garbage truck proximately caused her injuries—for which the City's governmental immunity is waived—or a mechanical malfunction in the truck proximately caused her injuries. Sandoval relied on a Texas Peace Officer's Crash Report completed by an HPD officer. The report stated that the driverless garbage truck "possibly because of defective brakes began to drive" down the street and "failed to drive in a single lane . . . ." Sandoval also argued that a fact issue existed concerning whether her injuries were caused by the use or condition of tangible personal property, that is, the garbage truck. *See id.* § 101.021(2).

The City filed a reply primarily disputing that the crash report raised a fact issue. The City emphasized that Cadoree was standing outside the garbage truck when it mechanically malfunctioned, and he had placed the truck in neutral gear and

5

set the parking brake before exiting. The City also argued that the motor-vehicle immunity waiver and the immunity waiver for use or condition of tangible personal property cannot be alternatively pleaded.

The trial court held a hearing. It subsequently signed an interlocutory order denying the City's motion for summary judgment. The City timely appealed.

## Texas Tort Claims Act

In its sole issue on appeal, the City contends that the trial court erred by denying its motion for summary judgment because it is entitled to governmental immunity from suit under the TTCA. The City argues that Sandoval's alleged injuries were caused by a mechanical malfunction in the garbage truck while Cadoree was outside the vehicle and not actively using or operating it when it crashed into Sandoval's home, and therefore the TTCA's motor-vehicle waiver of immunity does not apply. The City further argues that the TTCA's immunity waiver for a condition or use of personal property does not apply because Cadoree was not actively using the vehicle at the time of the incident and because the TTCA does not permit alternative pleading. Finally, the City argues that the TTCA does not waive immunity for claims of negligent entrustment, negligent maintenance, or negligent hiring, training, or supervision.[2]

---

[2] The City's motion for summary judgment acknowledged Sandoval's gross negligence claims but provided no analysis or legal authority concerning whether the TTCA waives such claims. *See* TEX. R. CIV. P. 166a(c) (requiring summary

6

## A.     Standard of Review

Governmental immunity protects political subdivisions of the State against lawsuits for damages unless the State consents to suit. *City of Houston v. Branch*, 695 S.W.3d 580, 586 (Tex. App.—Houston [1st Dist.] 2024, pet. denied) (en banc); *see also Harris Cnty. v. Annab*, 547 S.W.3d 609, 613 (Tex. 2018) (stating that Legislature's waiver of immunity must be in "clear and unambiguous language") (quoting TEX. GOV'T CODE § 311.034). Governmental immunity deprives trial courts of subject-matter jurisdiction over suits against a governmental entity. *Fraley v. Tex. A&M Univ. Sys.*, 664 S.W.3d 91, 96 (Tex. 2023); *see also Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993) ("Subject matter jurisdiction is essential to the authority of a court to decide a case.").

"The party suing the governmental unit bears the burden of affirmatively showing waiver of immunity." *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). Whether the plaintiff has met this burden and established a trial court's subject-matter jurisdiction is a question of law that we review de novo.

---

judgment movant to establish that no genuine issue of material fact exists and that party is entitled to judgment as matter of law). Similarly, the City states on appeal that the TTCA does not waive immunity for gross negligence claims, but the City provides no substantive analysis or legal authority supporting this statement. Therefore, the City has waived any arguments concerning Sandoval's gross negligence claims. *See* TEX. R. APP. P. 38.1(i); *Guimaraes v. Brann*, 562 S.W.3d 521, 538 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("Failure to cite to appropriate legal authority or to provide substantive analysis of the legal issues presented results in waiver of a complaint on appeal.").

*Fraley*, 664 S.W.3d at 97; *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Branch*, 695 S.W.3d at 586.

A party challenging subject-matter jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both. *Branch*, 695 S.W.3d at 586. When the pleadings are challenged, we consider whether the plaintiff has alleged facts affirmatively demonstrating that the trial court has subject-matter jurisdiction. *Id.* We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Miranda*, 133 S.W.3d at 226.

When the existence of jurisdictional facts is challenged, we move beyond the pleadings "and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim." *Branch*, 695 S.W.3d at 586 (quoting *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770–71 (Tex. 2018)). When the parties submit jurisdictional evidence that implicates the merits of the case, "we take as true all evidence favorable to the nonmovant." *Id.* (quoting *Miranda*, 133 S.W.3d at 228). We indulge every reasonable inference and resolve any doubt in favor of the nonmovant. *Id.* at 587. We cannot, however, "disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not." *Id.* at 587 (quoting *Clark*, 544 S.W.3d at 771).

8

A party may challenge a trial court's subject-matter jurisdiction in various procedural vehicles, including a motion for summary judgment as the City did here.[3] *Clark*, 544 S.W.3d at 770; *see* TEX. R. CIV. P. 166a. A party is entitled to traditional summary judgment if it establishes that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion[.]" TEX. R. CIV. P. 166a(c).

The movant has the initial burden to meet the summary judgment standard of proof for a jurisdictional challenge. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *see Miranda*, 133 S.W.3d at 228 ("By requiring the [governmental unit] to meet the summary judgment standard of proof . . . , we protect the plaintiffs from having to put on their case simply to establish jurisdiction.") (quotations omitted). If the movant meets its initial summary judgment burden to establish a lack of jurisdiction, then the burden shifts to the nonmovant to raise a genuine issue of material fact concerning the jurisdictional issue. *Garcia*, 372 S.W.3d at 635. If a fact issue exists, summary judgment must be denied. *Id.*; *Miranda*, 133 S.W.3d at 227–28; *see* TEX. R. CIV. P. 166a(c). If, however, the evidence is undisputed or fails to raise a fact issue, then the

---

[3] This Court has appellate jurisdiction to review an interlocutory order denying a governmental entity's motion for summary judgment based on governmental immunity, which implicates subject-matter jurisdiction. *PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 301 n.1 (Tex. 2019).

jurisdictional issue may be decided as a matter of law. *Garcia*, 372 S.W.3d at 635;

*Miranda*, 133 S.W.3d at 228.

**B.      Governing Law**

As a political subdivision of the State, cities generally have governmental

immunity from suit unless the Legislature has consented to suit. *See Dohlen v. City*

*of San Antonio*, 643 S.W.3d 387, 392 (Tex. 2022); *Branch*, 695 S.W.3d at 586. The

TTCA creates a limited waiver of governmental immunity for certain personal injury

claims. *Fraley*, 664 S.W.3d at 96; *see also* TEX. CIV. PRAC. & REM. CODE

§ 101.025(a) ("Sovereign immunity to suit is waived and abolished to the extent of

liability created by this chapter."). Relevant here, section 101.021 contains two

separate waivers of immunity in subsections (1) and (2):

> A governmental unit in the state is liable for:
>
> (1)    property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
>> (A)    the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>>
>> (B)    the employee would be personally liable to the claimant according to Texas law; and
>
> (2)    personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021.

10

**C.      Governmental Immunity Under Section 101.021(1)**

The City primarily argues that the motor-vehicle immunity waiver in section 101.021(1) does not apply here because Sandoval's alleged injuries arose from an unspecified mechanical malfunction in the garbage truck, which is not an active "use" or "operation" of a motor vehicle. Sandoval responds that Cadoree was driving the garbage truck when it caused her injury, and therefore a fact issue exists concerning whether the City's governmental immunity is waived.

As stated above, section 101.021(1) waives governmental immunity for "property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if . . . the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle[.]" *Id.* § 101.021(1)(A). The issue is whether the evidence, taken in Sandoval's favor, creates a fact issue on whether her injury was caused by Cadoree's "operation or use of a motor-driven vehicle." *See id.*

Everyday terms like "use" and "operation" should be given their ordinary, everyday meaning. *PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 303 (Tex. 2019). For purposes of section 101.021(1)(A), the Texas Supreme Court has defined "use" as "to put or bring into action or service; to employ for or apply to a given

11

purpose." *Id.* (quotation omitted). Similarly, the court has defined "operation" as "a doing or performing of a practical work." *Id.* (quotation omitted).

Whether the "use" or "operation" of a motor vehicle was "active" at the time of an incident is an important consideration, but section 101.021(1) "does not explicitly require that the operation or use be active or that it be ongoing at the time of the incident." *Id.* at 305 (quotations omitted). A "close temporal proximity" between an employee's actions or omissions and an incident can satisfy concerns that the "use" or "operation" was active at the time of the incident. *Id.*

The "arises from" language in section 101.021(1) "requires a nexus between the injury negligently caused by a governmental employee and the operation or use of a motor-driven vehicle." *Id.* at 302 (quotation omitted). The "nexus requires more than mere involvement of property." *Id.* (quotation omitted). The employee's use or operation of the motor vehicle "must have actually caused the injury." *Id.* (quotation omitted); *see Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003) (stating that operation or use of motor vehicle does not cause injury if it does no more than furnish condition that makes injury possible) (quotation omitted).

Here, Sandoval alleged that City-employee Cadoree was driving a City-owned garbage truck near her house. He was standing outside the truck when it "began moving forward and smashed through [Sandoval's] parked vehicles, garage

12

port and personal residence." Sandoval was asleep inside the house, and she allegedly suffered injuries to her head, neck, back, legs, and knees.

The City's summary judgment evidence showed that Cadoree exited the garbage truck to pick up a waste bin he had knocked over with the garbage truck's mechanical service arm. Before exiting, he put the truck in neutral gear and set the parking brake. While he was outside the truck, it "started to accelerate, jumped into a forward drive gear and began to move forward." Cadoree was unable to stop the truck before it hit Sandoval's home and cars.

A Solid Waste Management Department report "noted that after the truck was pulled away from the house and onto the street" following the incident, "it began to accelerate on its own power again." The report stated that the cause of the collision was "Mechanical Failure" of the truck and not Cadoree's actions, although the report noted that an HPD vehicle inspection officer had inspected the truck, but the "results are unknown." Cadoree's supervisor authored two memoranda a few days after the incident. The first memo stated that "the accident is undetermined[] [p]ending shop investigation." The second memo stated that Cadoree was not at fault.

We conclude that the City's evidence does not establish that no genuine issue of material fact exists concerning whether Sandoval's injuries arose from the use or operation of the garbage truck. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A). The City does not dispute that Cadoree was using or operating the garbage truck

13

within the meaning of section 101.021(1) by driving the truck, putting it in neutral gear, and setting the parking brake before exiting the truck to pick up the fallen waste bin. *See PHI*, 593 S.W.3d at 303–04 (concluding that "[i]n terms of the everyday experience of driving, . . . ensuring your car will not roll away after you leave it . . . is an integral part of the 'operation or use' of a vehicle"). These actions fit squarely within the common meanings of "use" and "operation." *See id.* at 303 (defining "use" as "to put or bring into action or service; to employ for or apply to a given purpose," and defining "operation" as referring to "a doing or performing of a practical work") (quotation omitted).

The summary judgment evidence establishes a close temporal proximity between Cadoree's driving the garbage truck, the alleged mechanical malfunction, and the subsequent crash into Sandoval's house and cars. *See id.* at 305 (concluding that "close temporal proximity between [state employee's] allegedly negligent parking, the van beginning to roll, and the collision with the helicopter satisfies the concerns . . . that the driver must have been actively operating the vehicle at the time of the incident") (quotations omitted). Cadoree was driving the truck immediately before it malfunctioned and crashed into Sandoval's property. We cannot ignore the facts that Cadoree left the truck's engine running when he exited the vehicle and that he was unable to stop the truck after he recognized the driverless truck was accelerating down the street. *See Branch*, 695 S.W.3d at 586–87 (stating that

14

reviewing court takes as true all jurisdictional evidence favorable to nonmovant and indulges every reasonable inference and resolves any doubts in favor of nonmovant).

Moreover, an injury can have more than one proximate cause. *PHI*, 593 S.W.3d at 303. The summary judgment evidence does not foreclose the possibility that Cadoree's actions or omissions—including driving the vehicle and exiting it while leaving the engine running immediately before the malfunction—were a proximate cause of the incident. Indeed, the City's own evidence indicates in part that the cause of the accident was unknown.

The City's mechanical-malfunction argument relies solely on *Texas Parks and Wildlife Department v. E.E. Lowrey Realty, Ltd. See* 235 S.W.3d 692 (Tex. 2007) (per curiam). There, the Texas Parks and Wildlife Department (TPWD), a state agency, had stored a patrol boat in Lowrey's storage facility when the facility caught fire. *Id.* at 693. Before the fire, two TPWD employees were installing a radio, siren, and lights on the boat, but the employees had left the facility before the fire. *Id.* at 693, 694. Lowrey sued TPWD alleging negligence causes of action under the TTCA relating to the installation of the equipment on the patrol boat. *Id.* at 693.

TPWD filed a plea to the jurisdiction arguing that the TTCA's motor-vehicle waiver did not apply. *Id.* Lowrey responded that the fire may have been caused by an electrical fault in the boat's wiring, which constituted a "use" of a motor vehicle sufficient to waive TPWD's immunity. *Id.* at 694. The Texas Supreme Court held

15

that the motor-vehicle waiver did not apply because there was not a sufficient nexus between the operation or use of the patrol boat and the fire as required to waive immunity. *Id.* Rather than a "use" or "operation" of the boat within the meaning of section 101.021(1), the court concluded that Lowrey's claims were based on allegations that the TPWD employees left the premises while the boat's wiring was in a dangerous condition. *Id.*

*E.E. Lowrey Realty* is distinguishable. Unlike the faulty wiring in a boat parked at a storage facility, this case involves an alleged mechanical malfunction in a truck that Cadoree left running in the street while he was driving it. Thus, the nexus between Cadoree's use or operation of the truck and its collision with Sandoval's home and cars is more substantial than the faulty wiring in the stored patrol boat in *E.E. Lowrey Realty*.

We conclude that a fact question exists concerning whether Sandoval's injuries and property damage arose from the operation or use of a motor-driven vehicle or equipment.[4] *See* TEX. R. CIV. P. 166a(c); TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A). Accordingly, we hold that the trial court did not err by denying the City's motion on this basis.

---

[4]     Based on this conclusion, we need not consider whether the City's immunity was also waived under TTCA section 101.021(2). *See* TEX. CIV. PRAC. & REM. CODE § 101.021(2); TEX. R. APP. P. 47.1.

**D. Causes of Action for Negligent Entrustment, Negligent Maintenance, and Negligent Hiring, Training, and Supervision**

The City also argues that the TTCA does not waive immunity for claims of negligent maintenance, negligent entrustment, and negligent hiring, training, and supervision.

Sandoval's petition alleged that the City was liable for the following acts or omissions:

    a.    Failure to provide Ronald Cadoree with safety instructions, guidelines, and procedures to properly and safely perform his work;

    b.    Failure to provide and enforce proper workplace safety standards and practices for Ronald Cadoree and those similarly situated;

    c.    Failure to adequately train employees and drivers in equipment failure hazards and responsiveness;

    d.    Failure to maintain the garbage truck in a safe working condition;

    e.    Failure to ensure proper equipment failure protection plan and/or rescue plan was in place and followed;

    f.    Failure to establish and implement a safety program for their employees, agents and workers as required by Tex. Labor Code Ann. § 411.001;

    g.    Failure to properly supervise employees;

    h.    Failure to refrain from leaving incompetent employees without supervision;

    i.    Failure to thoroughly investigate the background of its employees;

    j.    Failure to ensure that employees it retains are competent for service;

k.     Failure to inquire into the driving background of Ronald Cadoree when hiring him into a position that would cause him to operate commercial vehicles on a public roadway;

l.     Failure to inquire about the qualifications of Ronald Cadoree when hiring him as a prospective employee into a position that would cause him to come into contact with the public while operating a commercial vehicle; [and]

m.    [The City's] deficient policies, management, decision-making, and hiring by requiring or permitting Ronald Cadoree to undertake his job duties with a faulty multi-ton commercial vehicle, or garbage truck[.]

The City characterizes these claims as claims for negligent maintenance, negligent entrustment, and negligent hiring, training, and supervision. The City cites several cases in support of its argument that the TTCA does not waive immunity for these claims. Sandoval does not respond to this argument or dispute the City's characterization of these claims.

We agree with the City that many of Sandoval's negligence claims do not invoke a waiver of immunity under the TTCA. Courts have held that the motor-vehicle waiver in TTCA section 101.021(1) does not apply to negligent maintenance of a vehicle.[5] *E.g.*, *Tex. Dep't of Crim. Just. v. Pike*, No. 10-19-00098-CV, 2020 WL 6326469, at *3 (Tex. App.—Waco Oct. 28, 2020, no pet.) (mem. op.) (stating that maintenance of tractor which injured plaintiff is not "use" under TTCA); *San*

---

[5]    Neither party has presented any authority establishing that negligent maintenance is a condition or use of tangible personal property within the meaning of section 101.021(2), and our own research has not revealed any such authority. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(2).

18

*Antonio Indep. Sch. Dist. v. Hale*, No. 04-18-00102-CV, 2018 WL 3129436, at *3 (Tex. App.—San Antonio June 27, 2018, no pet.) (mem. op.) ("[M]aintenance is not operation or use of the school bus."). Courts have also held that negligent entrustment is not actionable under the TTCA. *E.g.*, *Durbin v. City of Winnsboro*, 135 S.W.3d 317, 325 (Tex. App.—Texarkana 2004, pet. denied) ("[N]egligent entrustment does not state a cause of action under the Tort Claims Act."). Finally, courts have also held that negligent hiring, training, and supervision claims are not actionable under TTCA section 101.021(2). *See Eastland Cnty. Coop. Dispatch v. Poyner*, 64 S.W.3d 182, 198 (Tex. App.—Eastland 2001, pet. denied) ("[F]ailure to train, supervise, perform background checks, and other like claims made by appellee are not such that implicate the use of tangible personal or real property."); *see also Annab*, 547 S.W.3d at 614 (stating that TTCA does not waive governmental immunity for allegations concerning hiring, firing, or disciplining of police officer because "the county's failure to take action based on information it knew or should have known about its employee" is not use of tangible personal property). Sandoval has not pointed to any provision of the TTCA waiving the City's immunity for these claims. We therefore hold that the trial court erred by denying summary judgment on these claims.

We sustain in part and overrule in part the City's sole issue.

19

## Conclusion

We reverse the trial court's order denying the City's motion for summary judgment on Sandoval's claims for negligent maintenance, negligent entrustment, and negligent hiring, training, and supervision for lack of subject-matter jurisdiction, and we render judgment dismissing these claims. We affirm the remainder of the trial court's order denying the City's motion.


David Gunn
Justice

Panel consists of Chief Justice Adams and Justices Rivas-Molloy and Gunn.