**Reversed and Rendered and Memorandum Opinion filed February 28, 2023.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-21-00482-CV

_____

## CITY OF HOUSTON, Appellant

## V.

## JONATHAN GONZALES, Appellee

**On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 2016-42378**

## MEMORANDUM OPINION

After a bench trial, the trial court awarded appellee Jonathan Gonzales damages on his negligence claim against appellant City of Houston arising out of a traffic accident between Gonzales and a peace officer employed by the City. On appeal, the City argues the trial court erred by not dismissing Gonzales's claims for want of jurisdiction because the peace officer was responding to an emergency call or emergency situation, and the officer did not exhibit conscious indifference or reckless disregard for the safety of others. *See* Texas Tort Claims Act, Tex. Civ.

Prac. & Rem. Code Ann. § 101.055(2). We reverse the final judgment of the trial court and render judgment dismissing Gonzales's suit for want of subject-matter jurisdiction.

## I.  BACKGROUND

Houston Police Department (HPD) probationary peace officer Daniel Iwai was driving south on the feeder road of Beltway 8 in the far-right lane one January night in 2016.[1] He was driving a HPD vehicle with his training officer, Kamesha Baker, in the passenger seat when he received a priority-two call for assistance with a suspicious vehicle. Iwai began heading towards the location of the call although he did not activate his light or sirens. Testimony at trial established that the HPD standard procedure for response to a priority-two call is without emergency equipment, i.e. no lights or siren, although the officer has discretion to employ emergency equipment if warranted by the situation and after notifying their dispatch.[2]

While they were in transit, Iwai and Baker testified that another vehicle pulled into their lane of travel leaving Iwai with little time to avoid a collision.

---

[1] The term probationary officer refers to a peace officer still undergoing field training. Iwai has since successfully completed his training and was employed with the City of Houston at the time of trial.

[2] Evidence at trial established HPD has a response-time goal of five minutes for priority-two calls. Houston Police Department General Order 600-01 provides "[p]riority two calls for service represent in-progress property crimes and/or a potential threat to human welfare, and assume that if not in-progress, the event recently occurred or response to the scene is urgent." Although the Transportation Code generally requires audible or visual signals—lights and sirens—to be used in responding to an emergency call, peace officers may operate an authorized emergency vehicle without audible or visual signals if "complying with a written regulation relating to the use of audible or visible signals adopted by the local government that employs the officer or by the department." Tex. Transp. Code Ann. § 546.004(c)(2); *see also* Tex. Transp. Code Ann. § 546.003 (audible or visual signals required "at the discretion of the operator in accordance with policies of the department or the local government that employs the operator").

Iwai applied his brakes and swerved his vehicle to the right into the driveway of a shopping center. At the time Iwai pulled into the driveway, Gonzales was in his vehicle in the same driveway waiting to exit the driveway onto the feeder road. The vehicle driven by Iwai struck the rear bumper of Gonzales's vehicle on the driver's side. The officer who investigated the accident determined the collision was caused by a third vehicle making an unsafe lane change. The record does not reflect that Iwai was cited or disciplined for the accident or his response.

To recover for injuries Gonzales alleges he received in the collision, Gonzales filed suit against the City in 2016. The case was tried to the bench in June 2021. The City argued at trial that the sudden-emergency exception applied to preclude the waiver of government immunity provided by the Texas Tort Claims Act (TTCA).[3] The trial court asked for briefing on the sudden-emergency exception, and the City filed a plea to the jurisdiction with responsive briefing after trial. In July 2021, the trial court rendered a final judgment in favor of Gonzales and awarded damages of $250,000. The City now appeals.

## II. ANALYSIS

In issue 1, the City argues the trial court abused its discretion by not dismissing Gonzales's for want of jurisdiction because the City met its burden of establishing the application of the TTCA's emergency exception. Alternatively, the City argues in issue 2 that the sudden-emergency defense bars a finding of liability against the City, and in issue 3 that the trial court erred in allowing Gonzales to amend his pleadings on the eve of trial and increase his damages without following Texas Rule of Civil Procedure 169. Because we agree the TTCA's emergency exception removes Gonzales's suit against the City from the statutory waiver of immunity, we do not reach issues 2 and 3. Tex. R. App. P. 47.1.

---

[3] The City first asserted its plea to the jurisdiction at trial.

## A.    Standard of review

Subject-matter jurisdiction is necessary to a court's authority to decide a case. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). A plaintiff must allege facts affirmatively showing the trial court has subject-matter jurisdiction. *Id.* at 446. Sovereign immunity from suit defeats a trial court's subject-matter jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224–25 (Tex. 2004). Whether a court has subject-matter jurisdiction is a question of law. *Texas Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

## B.    Governmental immunity

Sovereign and governmental immunity are common-law concepts that generally protect the State and its political subdivisions from the burdens of litigation. *Harris Cnty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018). "Sovereign immunity protects the state and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts." *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011) (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)).

Governmental immunity has two components: "immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). When a governmental defendant challenges jurisdiction on immunity grounds, the plaintiff has the burden to "affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex.

4

2003). Immunity is waived only by clear and unambiguous language. *See* Code Construction Act, Tex. Gov't Code Ann. § 311.034 ("[A] statute shall not be construed as a waiver of [] immunity unless the waiver is effected by clear and unambiguous language.").[4]

## C.    Texas Tort Claims Act

The TTCA provides a limited waiver of immunity for tort suits against governmental units. TTCA, Tex. Civ. Prac. & Rem. Code § 101.021; *see Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex. 2000). Under the section of the TTCA relevant here, a governmental entity may be liable for the torts of its employee "acting within his scope of employment" arising from the operation or use of motor-driven vehicles or equipment if, among other things, the "employee would be personally liable to the claimant according to Texas law[.]" TTCA, Tex. Civ. Prac. & Rem. Code § 101.021(1). The parties do not dispute that Gonzales's claims arise from Iwai's use of a motor vehicle and that Iwai acted within the scope of his employment with the City at the time of the collision. Instead, the parties disagree whether the emergency exception to the waiver of governmental immunity applies.

The TTCA includes a subchapter entitled "Exceptions and Exclusions" that lists circumstances under which the waiver of immunity does not apply. TTCA,

---

[4] There is a long-standing principle in Texas law that a distinction exists between municipalities and other governmental units for governmental-immunity purposes. *See City of Galveston v. Posnainsky*, 62 Tex. 118, 126 (1884) ("Counties . . . are created by the legislature by general laws without reference to the wish of their inhabitants, and thus for essentially public purposes" whereas cities are incorporated through special charters and are "enacted at the request of those who are to be most directly benefited by them and with a view to this end."). Municipalities are an exception to the general rule of governmental immunity because a municipality is not immune for its proprietary functions. *See Tooke*, 197 S.W.3d at 343. There is no dispute between the parties that the operative facts of this lawsuit arise from the performance of a governmental function. TTCA, Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(1); *see* Tex. Const., art. X11, § 13(a) (classification of municipal functions).

Tex. Civ. Prac. & Rem. Code Ann. §§ 101.051–.067; *see City of San Antonio v. Hartman*, 201 S.W.3d 667, 671–72 (Tex. 2006). One of the exceptions addresses actions undertaken as part of an emergency response. Under this exception to immunity, the TTCA does not apply to a claim based on a governmental employee's conduct if that employee, while responding to an emergency call or reacting to an emergency situation, acts in compliance with laws or ordinances applicable to the emergency actions or, absent such laws or ordinances, the employee's actions are not taken with conscious indifference to or reckless disregard for the safety of others. *See* TTCA, Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2).

**D.    Gonzales did not defeat the application of the emergency exception**

Gonzales had the burden of negating the applicability of the emergency exception and affirmatively showing a waiver of immunity. *City of San Antonio v. Maspero*, 640 S.W.3d 523, 529 (Tex. 2022). He had to present evidence establishing at least one of the following: (1) Iwai was not responding to an emergency call or reacting to an emergency situation; (2) Iwai's actions were not in compliance with the laws and ordinances applicable to emergency action; or (3) Iwai's actions reflected conscious indifference or reckless disregard for the safety of others. *See* TTCA, Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2); *Maspero*, 640 S.W.3d at 529. Gonzales argues he presented evidence that Iwai was not responding to an emergency call and that Iwai's actions reflected reckless disregard for the safety of others.

**1.  Emergency call or situation**

The TTCA does not define the terms "emergency call" or "emergency situation," but Texas courts have interpreted the term "emergency" broadly. *City of Houston v. Sauls*, 654 S.W.3d 772, 786 (Tex. App.—Houston [14th Dist.] 2022,

pet. filed); *City of Houston v. Hussein*, No. 01-18-00683-CV, 2020 WL 6788079, at *8 (Tex. App.—Houston [1st Dist.] Nov. 19, 2020, pet. denied) (mem. op.); *see also Hartman*, 201 S.W.3d at 672–73 (although "emergency exception" provision has often been applied in connection with traffic accidents involving law enforcement or emergency vehicles, city's reaction to widespread roadway flooding constituted reaction to "an emergency situation"); *Quested v. City of Houston*, 440 S.W.3d 275, 284–85 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (officer not in uniform, driving personal vehicle was responding to emergency call of a hostage situation ); *Jefferson Cnty. v. Hudson*, No. 09-11-00168-CV, 2011 WL 3925724, at *3 (Tex. App.—Beaumont Aug. 25, 2011, no pet.) (mem. op) (responding or reacting to "unforeseen circumstances that call for immediate action"). The word "emergency" is defined as "an unforeseen combination of circumstances or the resulting state that calls for immediate action." *Emergency*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/emergency (last visited February 14, 2023); *see also* Code Construction Act, Tex. Gov't Code Ann. § 311.011 (words and phrases construed according to common usage).

The City argues the evidence at trial conclusively established that Iwai was both responding to an emergency call as well as an emergency situation. Gonzales argues extensively that Iwai was not responding to an emergency call but offers no argument or evidence that Iwai was not reacting to an emergency situation.

Iwai testified that he was cut off by another vehicle that moved into his lane of travel. Iwai testified that the actions of the third vehicle presented the possibility of an imminent multi-vehicle collision. Iwai's training officer testified that Iwai swerved to avoid being struck in the side of the vehicle and to avoid crashing into other vehicles around them. Iwai's account was also supported by the crash report. Even Gonzales testified he saw the third vehicle change lanes and move in front of

7

Iwai's vehicle. The only evidence presented at trial reflects that Iwai was presented with unforeseen circumstances requiring immediate action. *See Hudson*, 2011 WL 3925724, at *3; *see also Emergency*, Merriam-Webster.com, https://www.merriam-webster.com/ dictionary/emergency.

We conclude Gonzales did not present evidence that Iwai was not responding to an emergency situation.

### 2. Conscious indifference to the safety of others

The City argues that Gonzales never pleaded or argued conscious indifference at trial, nor did Gonzales put on any proof of conscious indifference. The City further argues there was no evidence at trial that Iwai knew that swerving to avoid the vehicle which pulled out in front of him posed a high degree of risk of serious injury and Iwai did not care about the result.

Gonzales relies on Iwai's testimony that he: (1) could not recall if he was speeding; (2) initially claimed he did not look before swerving, then claimed there was no time to check before swerving; (3) admitted he did not slam on his brakes; and (4) acknowledged he did not use emergency lights. Aggregating this testimony, Gonzales argues Iwai exhibited conscious indifference to the safety of others.

The terms "conscious indifference" and "reckless disregard" are not defined in the TTCA. However, the supreme court has explained "[c]onscious indifference in the context of a tort indeed consists of an act or omission involving an extreme risk to others, an actual awareness of that risk, and knowledge that harm was a highly probable consequence of the act or omission." *Tarrant Cnty. v. Bonner*, 574 S.W.3d 893, 902 (Tex. 2019). "[R]ecklessness reflects more than a 'momentary judgment lapse' and instead 'requires a showing that the driver committed an act

he knew or should have known posed a high degree of risk of serious injury.'" *Maspero*, 640 S.W.3d at 531 (citations omitted). The definition of reckless in the Transportation Code driving is also relevant: it defines reckless driving to consist of driving a vehicle in "wilful or wanton disregard for the safety of persons or property." Tex. Transp. Code Ann. § 545.401(a).

At trial, Iwai testified that he did not slam on his brakes to avoid a collision. However, he described applying his brakes to slow the vehicle and swerve away from what he perceived would be a collision risk. Given Iwai's belief he was avoiding a multi-vehicle accident, this is no evidence of conscious indifference or recklessness.

With respect to speeding, Iwai testified at trial that he did not recall if he was speeding as part of his response to the priority-two call. On cross-examination, Iwai admitted that he described his speed in the HPD incident report form as 45 to 50 mph. He also agreed that he testified in his deposition that he thought he was going less than 45 mph and agreed that his speed was between 35 and 45 mph. Testimony at trial established that the speed on the feeder road at the time of the incident was 45 mph. Evidence at trial tending to show that Iwai's vehicle was traveling slightly above the posted limit, at best for Gonzales, reflects negligence on the part of Iwai rather than "conscious indifference or "reckless disregard." *See* Tex. Transp. Code Ann. § 545.352(a) (speed in excess of limits established by law or posted by Texas Transportation Commission "is prima facie evidence that the speed is not reasonable and prudent and that the speed is unlawful"). Aside from the posted speed limit, there was no evidence Iwai was traveling an unsafe speed for the traffic or weather conditions. *See* Tex. Transp. Code Ann. § 545.351(a) ("An operator may not drive at a speed greater than is reasonable and prudent under the circumstances then existing.").

9

Gonzales's reliance on the lack of lights or sirens also does not reflect conscious indifference to the safety of others.[5] Given that HPD procedures state the standard response to a priority-two call is without lights or sirens, there was no evidence at trial suggesting that lights or sirens were needed to protect the safety of others at the time Iwai was presented with an imminent collision. There was no evidence Iwai committed an act he knew or should have known posed a high degree of risk of serious injury. *See Maspero*, 640 S.W.3d at 531. We therefore conclude no evidence exists to support a finding that Iwai's actions reflected conscious indifference to or reckless disregard for the safety of others.

We sustain issue 1.

### III. CONCLUSION

Having sustained issue 1 and not needing to address the remaining issues, we hold the trial court fundamentally erred by not dismissing the case for want of subject-matter jurisdiction. We reverse the judgment of the trial court and render the judgment the trial court should have rendered, a dismissal of Gonzales's suit

---

[5] Gonzales cites to this court's opinion in *Gomez v. City of Houston* for the proposition that failure to activate lights and sirens on a police vehicle in the course of an emergency call establishes reckless disregard. 587 S.W.3d 891, 902–03 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). However, Gonzales overstates the breadth of our holding in that case. In *Gomez*, a peace officer was responding to a priority-two call in wet and rainy conditions. *Id.* at 894–95. As the officer approached the intersection, he took his eyes off the road to adjust his radio and did not see the light at the intersection change. *Id.* There was also evidence that the officer was traveling the posted speed limit despite the wet and slick roads. *Id.* at 902–03. The officer attempted to stop his vehicle but could not do so before sliding into the intersection and colliding with another vehicle. *Id.* at 894–95. In addition to this evidence, we also considered that the officer had not activated the vehicle's siren (and there was a fact issue as to whether the lights were on), which might have warned other vehicles that an emergency vehicle was entering the intersection. *See id.* at 903. Concluding there was evidence that might support a finding that the officer acted recklessly, we held the trial court erred in granting the City's plea to the jurisdiction on the basis of the emergency exception. However, *Gomez* does not automatically establish reckless conduct on the part of an officer responding to an emergency call for not activating the vehicle's lights and sirens. Further, *Gomez* is distinguishable because it does not address a situation in which an officer is responding to an emergency situation, as we are addressing here.

10

for want of subject-matter jurisdiction. Tex. R. App. P. 43.2(c).

/s/    Charles A. Spain
        Justice

Panel consists of Justices Zimmerer, Spain, and Poissant.