# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00172-CV

**Texas Education Agency; Edward O'Neil, Director of Texas Education Agency; and Mike Morath, Commissioner of Education, Appellants**

**v.**

**Devereux Texas League City, Appellee**

---

### FROM THE 459TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-007028, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Devereux Texas League City sued the Texas Education Agency (TEA), as well as TEA Commissioner Mike Morath and TEA Director Edward O'Neil (the Officials), seeking declaratory and injunctive relief after the Officials revoked Devereux's eligibility to receive government funds for certain services it offered. The TEA and the Officials filed a plea to the jurisdiction, which the trial court denied. The TEA and the Officials perfected this interlocutory appeal from the trial court's order. We will reverse the trial court's order and render judgment dismissing Devereux's case.

### FACTUAL AND PROCEDURAL BACKGROUND

Federal law provides mandates to "ensure that all children with disabilities have available to them a free appropriate public education [(FAPE)] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education,

employment, and independent living." 20 U.S.C. § 1400(d)(1)(A); *accord* 34 C.F.R. §§ 300.17, .101(a) (2023). For a state to receive assistance under the Individuals with Disabilities Education Act, *see* 20 U.S.C. §§ 1400–1450, the state must submit a plan of policies and procedures that meets—to the satisfaction of the Secretary of Education—conditions set forth in relevant Department of Education regulations, *see* 34 C.F.R. § 300.100 (2023) (citing 34 C.F.R. §§ 300.101–.176 (2023)).

Special-needs and disabled children sometimes receive their FAPEs through placements in private facilities where the students can both receive their education and live full-time. These are known as "nonpublic residential placements." In Texas, the TEA has promulgated rules governing contracts for nonpublic residential placements among its broader set of rules intended to set forth Texas's plan for implementing federal policies for disabled students. *See* 19 Tex. Admin. Code § 89.1092 (2020) (Texas Education Agency, Contracting for Residential Educational Placements for Students with Disabilities). A Texas local education agency (LEA), *see* 34 C.F.R. § 300.28(a) (2023), with responsibility for a disabled student "may contract with a . . . private facility, institution, or agency inside or outside of this state for the provision of services to students with disabilities." Tex. Educ. Code § 29.008(a). The LEA may also "contract for residential placement of a student when the student's admission, review, and dismissal . . . committee determines that a residential placement is necessary in order for the student to receive a" FAPE. 19 Tex. Admin. Code § 89.1092(a). In the context of the contracting process between the LEA and the private facility, the "contract for residential placement," *see* Tex. Educ. Code § 29.008(a), and "the facility's education program," *see* 19 Tex. Admin. Code § 89.1092(a)(2), "must be approved by" the TEA Commissioner to receive government funds. The

Commissioner is to keep a list of the facilities he has approved for contracting. *See id.* § 89.1092(b)(1)–(3).

Devereux's petition alleges that it runs a campus of facilities in southeast Texas at which it offers nonpublic residential placements to Texas and non-Texas disabled students. In 2021, following an investigation of Devereux's facilities, the TEA and the Officials revoked Devereux's approval for contracting with Texas LEAs. The TEA sent Devereux a Notification of Approval Status Change to notify it that it was no longer approved for contracting. The Notification stated that Devereux's approval status was changed because of "Specific Areas of Noncompliance" explained in an enclosure sent with the letter. The enclosure included allegations that children at Devereux's facilities had been unlawfully restrained or secluded and cited statutes and regulations that TEA personnel believed Devereux had violated. Devereux disputed the allegations and asserted that any violations occurred outside the educational realm of its program, but the TEA refused to reconsider its position and notified Devereux that its "facility is no longer approved to offer nonpublic residential placements, to include any placements made by LEAs."

Devereux sued the TEA and the Officials, seeking declaratory and injunctive relief. In its claim against the TEA, Devereux alleged that "[t]his Court has subject matter jurisdiction over this matter because Devereux is seeking injunctive relief against the TEA for violation of Devereux's procedural due process rights under the Constitution." In its claim against the Officials, Devereux alleged that "this Court has subject matter jurisdiction over this matter because Devereux brings this suit against individuals Edward O'Neill and Mike Morath in their official capacit[ies] for directly contradicting the TEA's own policies and acting outside the scope of their authority." In addition to injunctive relief, Devereux sought "a Declaration that the Defendants' decision to end Devereux's eligibility to offer nonpublic residential placements is invalid, a

3

violation of due process, and is beyond the scope of authority provided to the Defendants under Chapter 7 of the Texas Education Code." The essence of Devereux's complaint is that the statutes and rules on which the TEA relied for its actions do not give the TEA authority to regulate Devereux's *residential* facilities but apply only to Devereux's *educational* programs. Devereux did not allege that any statute was unconstitutional, only that the actions of TEA and the Officials violated its constitutional rights and exceeded the Officials' statutory authority.

The TEA and the Officials filed a plea to the jurisdiction, arguing that the court lacked subject-matter jurisdiction over Devereux's claims because they are barred by sovereign immunity and a lack of standing. The trial court denied the plea. The TEA and the Officials perfected this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).

## STANDARD OF REVIEW

We review a grant or denial of a plea to the jurisdiction de novo. *See Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). A plaintiff must "allege facts that affirmatively demonstrate the court's jurisdiction" to hear the cause. *Harris Cnty. v. Annab,* 547 S.W.3d 609, 612 (Tex. 2018) (quoting *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). When, as here, a plea to the jurisdiction challenges only the pleadings, we determine from the pleadings alone whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction. *Matzen*, 659 S.W.3d at 388. This determination is a question of law that we review de novo. *Annab*, 547 S.W.3d at 612.

4

**DISCUSSION**

In their sole appellate issue, the TEA and the Officials contend that the trial court erred by denying their plea to the jurisdiction, whether because of sovereign immunity or lack of standing. We divide our discussion of this appeal into, respectively, Devereux's suit against the TEA and its ultra vires suit against the Officials.

*Suit against the TEA*

Devereux pleaded claims against the TEA for declaratory and injunctive relief, asserting a denial of a due-process interest. Sovereign immunity is not a bar for suits seeking declaratory or injunctive relief for violations of constitutional rights.[1] *See City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007) (suits for injunctive relief "may be maintained against governmental entities to remedy violations of the Texas Constitution"); *City of Beaumont v. Bouillon*, 896 S.W.2d 143, 149 (Tex. 1995) ("[S]uits for equitable remedies [including declaratory judgment] for violation of constitutional rights are not prohibited."); *Texas Health & Hum. Servs. Comm'n v. Sacred Oak Med. Ctr. LLC*, No. 03-21-00136-CV, 2022 WL 2251656, at *8 (Tex. App.—Austin June 23, 2022, no pet.) (mem. op.) ("[I]t is well settled that "'suits for injunctive relief' may be maintained against governmental entities to remedy violations of the Texas Constitution." (quoting *City of Elsa*, 226 S.W.3d at 392)); *see also Honors Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54, 60 (Tex. 2018) ("[I]t is well settled that trial courts may

---

[1] On the other hand, a suit for violation of *statutory* rights may not be brought against a governmental entity but must be brought against government officials as an ultra vires claim. *See, e.g.*, *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 623 (Tex. 2011) (dismissing suit against state agency based on alleged violation of statutory rights but remanding to give plaintiff opportunity to replead to bring suit against state officials as ultra vires claim); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 371–72 (Tex. 2009) (holding that governmental immunity did not bar suit against city officials for alleged violations of statute but barred same claims brought against governmental entities).

review an administrative action [if] the action adversely affects a vested property right or otherwise violates a constitutional right." (quoting *In re Office of the Attorney Gen.*, 456 S.W.3d 153, 157 (Tex. 2015)); *Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 404 (Tex. 2000) ("When the Legislature remains silent or denies a right of judicial review, administrative decisions may nevertheless be attacked in court if they adversely affect a vested property right or otherwise violate some provision of the State or Federal Constitution.").[2]

But even when sovereign immunity would not otherwise bar a cause of action, the plaintiff bringing the suit must plead a viable claim for injunctive relief: "While it is true that sovereign immunity does not bar a suit to vindicate constitutional rights, . . . immunity from suit is not waived if the constitutional claims are facially invalid." *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015); *see also Abbott v. Mexican Am. Legislative Caucus, Tex. House of Representatives*, 647 S.W.3d 681, 686 (Tex. 2022) ("Although the UDJA generally waives immunity for declaratory-judgment claims challenging the validity of statutes, we have held that 'immunity from suit is not waived if the constitutional claims are facially invalid.'" (quoting *Klumb*, 458 S.W.3d at 13)). Thus, if Devereux has not pleaded a viable claim for a constitutional violation, the TEA's immunity is not waived.

Devereux's constitutional claim against the TEA for declaratory and injunctive relief is brought under the federal Due Process Clause and the Texas Constitution's Due Course of Law Clause. Because the two clauses are so similar, "we have traditionally followed contemporary federal due process interpretations of procedural due process issues" when applying either clause. *Honors Acad.*, 555 S.W.3d at 61 (internal quotation marks omitted) (quoting *University of Tex.*

---

[2] We recognize there is some contrary authority. *See El Paso Indep. Sch. Dist. v. McIntyre*, 584 S.W.3d 185, 197–99 (Tex. App.—El Paso 2018, no pet.).

*Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995)). A two-part test governs a due-process claim: we must determine whether plaintiffs (1) have a liberty or property interest that is entitled to due-process protection and, (2) if so, we must determine what process is due. *Mosley v. Texas Health & Hum. Servs. Comm'n*, 593 S.W.3d 250, 264 (Tex. 2019).

Devereux argues that it has a vested interest in having the TEA approve Devereux for contracting for purposes of receiving government funds for nonpublic residential placements. But Devereux has not identified, nor have we found, any statute giving it a right to judicial review of a decision not to approve it for contracting for purposes of receiving government funds for its nonpublic residential placements. Accordingly, in order to have a viable claim for a due-process violation, Devereux must plead a legitimate claim of entitlement to continued government funding: "Before any substantive or procedural due-process rights attach, however, the citizen must have a liberty or property interest that is entitled to constitutional protection. . . . To have a constitutionally protected property interest, a person must have a 'legitimate claim of entitlement' rather than a mere 'unilateral expectation.'" *Honor Acad.*, 555 S.W.3d at 61 (quoting *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

But Devereux has not alleged a basis for having any entitlement to (and thus a vested property interest in) being approved for contracting. The text and structure of the statute and regulations that create the government's contracting-approval power do not give Devereux such an entitlement. First, both sides identify Education Code Section 29.008 as the statutory source of the Officials' authority to approve or not approve contracts for nonpublic residential placements at facilities like Devereux's. That statute provides in part:

> Each contract for residential placement must be approved by the commissioner. The commissioner may approve a residential placement contract only after at least

7

> a programmatic evaluation of personnel qualifications, adequacy of physical plant and equipment, and curriculum content. The commissioner may approve either the whole or a part of a facility or program.

Tex. Educ. Code § 29.008(a). That language conditions the Commissioner's power to approve a facility or program on a prior "programmatic evaluation of personnel qualifications, adequacy of physical plant and equipment, and curriculum content," s*ee id.*, but the statute nowhere gives facilities the *right* to be approved. It cannot reasonably be said that the statute *requires* approval for every contract submitted, because (a) such a reading would render meaningless the statute's implied requirement that contracts are not enforceable before being approved and (b) the statute contemplates that some contracts will indeed not be approved, including those for which the programmatic evaluation has not yet taken place or those with companies whose facilities fail the programmatic evaluation. Approval under Section 29.008(a) thus does not rise to the level of a legitimate claim of entitlement.

Both sides next identify provisions of the Administrative Code as granting the relevant approval authority. The main such provisions are, first, that when a facility provides educational services to a student under a contract with an LEA, "the facility's education program must be approved by the commissioner of education in accordance with subsection (d)" of the same section. 19 Tex. Admin. Code § 89.1092(a)(2). The same section elsewhere provides for a "commissioner's list of approved residential education programs," on which facilities might or might not appear. *See id.* § 89.1092(b)(1), (2). The referenced subsection (d) provides:

> (d) Residential facilities that provide educational services must have their educational programs approved for contracting purposes by the commissioner.
>
> > (1) If the education program of a residential facility that is not approved by the commissioner is being considered for a residential placement by a local school district, the school district should notify TEA in writing of its intent

to place a student at the facility. TEA shall begin approval procedures and conduct an onsite visit to the facility within 30 calendar days after TEA has been notified by the local school district. Approval of the education program of a residential facility may be for one, two, or three years.

(2) The commissioner shall renew approvals and issue new approvals only for those facilities that have contract students already placed or that have a pending request for residential placement from a school district. This approval does not apply to residential facilities that only provide related services or residential facilities in which the local accredited school district where the facility is located provides the educational program.

*Id.* § 89.1092(d)(1), (2).

These provisions of the Administrative Code are similar to Education Code Section 29.008(a) in that none of them limit or condition in any way the TEA Commissioner's power to approve or not approve a facility. There are, for example, conditions to be met before a program may enjoy placement on the approved list, such as the "onsite visit." *See id.* § 89.1092(d)(1). But there are no limitations or conditions on denying, revoking, or removing a program from the approved list. Devereux therefore has not pleaded a legitimate claim of entitlement to approval to receive government funds for nonpublic residential placements. Accordingly, the TEA's immunity is not waived for Devereux's constitutional claim for declaratory and injunctive relief. The trial court erred in denying the TEA's plea to the jurisdiction.

***Suit against the Officials***

Devereux seeks to avoid the Officials' sovereign immunity by pleading an ultra vires claim against them. The Officials, as government officials sued in their official capacities, generally enjoy sovereign immunity. *See Van Boven v. Freshour*, 659 S.W.3d 396, 401 (Tex. 2022); *Honors Acad.*, 555 S.W.3d at 57, 68. But sovereign immunity does not bar a claim against a government officer for acting without legal authority or for failing to perform a purely ministerial

9

act, a claim known as an ultra vires suit. *See Van Boven*, 659 S.W.3d at 401–02; *Schroeder v. Escalera Ranch Owners' Ass'n*, 646 S.W.3d 329, 332 (Tex. 2022). "To fall within this *ultra vires* exception . . . a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Houston Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 161 (Tex. 2016) (internal quotation marks omitted) (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)). The Supreme Court of Texas has explained how officials' "discretion" in exercising the powers granted to them is central to ultra vires analysis:

> As we said in *Heinrich*, governmental immunity protects exercises of discretion, but when an officer acts beyond his granted discretion—in other words, when he acts without legal authority—his acts are not protected. Thus, "discretion," as we have used the term in this context, cannot mean *limited* discretion that is otherwise constrained by the principles of law. Rather, our *ultra vires* caselaw uses the term in its broad sense. Accordingly, the principle arising out of *Heinrich* and its progeny is that governmental immunity bars suits complaining of an exercise of *absolute* discretion but not suits complaining of *either* an officer's failure to perform a ministerial act *or* an officer's exercise of judgment or *limited* discretion without reference to or in conflict with the constraints of the law authorizing the official to act. Only when such absolute discretion—free decision-making without any constraints—is granted are *ultra vires* suits absolutely barred.

*Id.* at 163 (citations omitted).

The TEA Commissioner has broad authority to approve or deny a contract for a nonpublic residential placement. The language of Education Code Section 29.008(a) quoted above establishes this breadth of discretion. Although that language places conditions on the Commissioner's power to *approve* contracts for placements, the statute does not contain any conditions or restrictions on his power to *disapprove* contracts. This feature distinguishes this statute from other grants of authority that have supported ultra vires claims where, for example, the grants require the decisionmaker to act only "according to" or "in accordance with" another

10

law. *See, e.g.*, *Van Boven*, 659 S.W.3d at 402–03 (concluding that because regulation empowered agency to act "according to applicable federal rules and statutes," claim that agency had failed to follow relevant federal rules stated valid ultra vires claim); *Houston Belt & Terminal Ry.*, 487 S.W.3d at 166–67 (concluding that because ordinance empowered official to act "in accordance with and subject to" remainder of ordinance, claim that official misapplied definition from elsewhere within ordinance stated valid ultra vires claim). Also, Section 29.008(a)'s language is broad enough to include approval of the residential aspect of a program as well as its educational aspect—the statute speaks to the Commissioner's power to "approve a residential placement contract" as a whole contract or discrete parts of it.

Section 29.008(a) is instead like the authority-granting city ordinance in *Schroeder*, under which the plaintiffs failed to state a valid ultra vires claim. There, the ordinance's only restriction on a zoning commission's authority to approve a submitted plat was that the commission "must '*consider* the Preliminary Plat application, the Director's report, State law, and compliance with'" the zoning code. *Schroeder*, 646 S.W.3d at 334–35 (emphasis added). The plaintiffs there failed to state a valid ultra vires claim because while the relevant ordinance "limits the discretion of what the [Zoning C]ommission may consider, it does not otherwise restrict the Commission's exercise of its discretion to determine conformity" of a submitted plat. *Id.* at 335. Put simply, because the ordinance required only that the commission "consider" certain items and because the commission had indeed considered those items before approving the submitted plat, the plaintiffs could not state a valid ultra vires claim. *See id.* ("Provided that the Commissioners fully consider the applicability of [zoning code] requirements to a plat, the [zoning code] commits to them the discretion to determine a plat's conformity for approval purposes.").

Similarly here, Section 29.008(a) does not place express conditions or limitations on the Officials' authority to disapprove or revoke such contracts. Accordingly, Devereux has not alleged and cannot allege that the statute imposes ministerial duties on the Officials, nor that the Officials have acted beyond their authority under the statute by refusing to approve placement contracts with Devereux. This is true even if the Officials have otherwise made what might appear to be an erroneous decision. *See, e.g.*, *Hall v. McRaven*, 508 S.W.3d 232, 242 & n.4 (Tex. 2017) ( "Our intermediate courts of appeals have repeatedly stated that it is not an *ultra vires* act for an official or agency to make an erroneous decision while staying within its authority," and citing cases); *Gamboa v. Das*, No. 03-20-00440-CV, 2021 WL 3669330, at *3 (Tex. App.—Austin Aug. 19, 2021, no pet.) (mem. op.) ("Although Gamboa is dissatisfied with the results of the administrative hearing, an ultra vires claim must challenge a government official's authority, 'not the quality of the official's decisions.'" (quoting *Honors Acad.*, 555 S.W.3d at 68)); *Creedmoor–Maha Water Supply Corp. v. Texas Comm'n on Env't Quality*, 307 S.W.3d 505, 517–18 (Tex. App.—Austin 2010, no pet.) ("These are allegations that TCEQ reached an incorrect or wrong result when exercising its delegated authority, not facts that would demonstrate TCEQ exceeded that authority.").

In its relevant regulations, the TEA has interpreted applicable statutes to require denial or revocation of approval for contracting if the Department of State Health Services has not given the facility at issue valid licensure: "A school district may contract for a residential placement of a student only with either public or private residential facilities that maintain current and valid licensure by the . . . Department of State Health Services for the particular disabling condition and age of the student." 19 Tex. Admin. Code § 89.1092(a)(1). In the present case, the Department of State Health Services did in fact place a temporary suspension on Devereux's

licensure, and Devereux does not challenge the validity of that period of probation or the TEA's regulation quoted above.

Instead, Devereux argues that the Officials "have acted outside the scope of their legal authority by: (1) wrongfully revoking [Devereux]'s ability to offer nonpublic residential placements based on erroneous findings of statutory noncompliance; (2) depriving [Devereux] of due process; and (3) arbitrarily determining that [Devereux] must wait an entire year before it can apply for re-approval." As for the first of these arguments, there are no discernible statutory limits on the Officials' discretion to revoke approval for contracting after initially having granted it, to deny re-approval, or to decline to approve a contract for a nonpublic residential placement. *See* Tex. Educ. Code § 29.008(a); *see also* 19 Tex. Admin. Code § 89.1092. Without such limits, Devereux cannot allege or show that the Officials exceeded their statutory authority.

Next, under the due-process argument, we reiterate here what we stated above: Approval for contracting under Section 29.008(a) of the Education Code or Title 19, Section 89.1092 of the Texas Administrative Code does not rise to the level of a legitimate claim of entitlement and so cannot support a claim of denial of due process.

Finally, the year delay in applying for re-approval, even if it could constitute an error or abuse of discretion, is not an alleged harm that can now be redressed through prospective relief. "Ultra vires suits . . . do not address past conduct" but instead "are available to require a government actor to comply with the law in the future." *Texas Educ. Agency v. Houston Indep. Sch. Dist.*, 660 S.W.3d 108, 110 (Tex. 2023). Because the year that Devereux's argument refers to has already passed, injunctive relief is unavailable. This claim thus cannot fall into the ultra

13

vires exception. We hold that Devereux has not pleaded a valid waiver of or exception to the Officials' sovereign immunity.[3]

The trial court therefore erred in denying the plea to the jurisdiction. We sustain the TEA and the Officials' sole appellate issue.

## CONCLUSION

We reverse the trial court's denial of the plea to the jurisdiction and render judgment dismissing Devereux's suit.

_____

J. Woodfin Jones, Justice

Before Chief Justice Byrne, Justices Smith and Jones[*]

Reversed and Rendered

Filed: May 10, 2023

[*]Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).

---

[3] As a result, we need not address the issue of standing.