# NO. 12-23-00231-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *SKILL ZONE USA, LLC,*<br>*APPELLANT* | § | *APPEAL FROM THE 294TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *VAN ZANDT COUNTY, TEXAS,*<br>*APPELLEE* | § | *VAN ZANDT COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant, Skill Zone USA, LLC (Skill Zone) appeals the trial court's grant of Appellee Van Zandt County's (the County) plea to the jurisdiction. In three issues, Skill Zone challenges whether the Declaratory Judgment Act (DJA) waives the County's governmental immunity and the trial court's implied finding as to ripeness. We reverse and remand in part and affirm in part.

## BACKGROUND

In March of 2022, the Van Zandt County's Commissioners Court held a public "workshop" regarding the possibility of adopting regulations covering establishments known as "game rooms." The County's district attorney, Tonda Curry, attended the meeting. The County adopted and enacted the initial version of the Game Room Regulations on April 27, but repealed and replaced this version with a revised iteration of the Game Room Regulations on July 6 (the Regulations).

In general, the Regulations require that establishments defined as "game rooms" within the County apply for and obtain a permit in order to operate. Operating a game room without a permit carries a civil penalty of up to $10,000.00 for each day of unlawful operation. Section 1.4(a) defines "game room" as

[A] for-profit business located in a building or place that contains six (6) or more: (1) amusement redemption machines; or (2) electronic, electromechanical, or mechanical contrivances that, for consideration, afford a player the opportunity to obtain a prize or thing of value, the award of which is determined solely or partially by chance, regardless of whether the contrivance is designed, made, or adopted solely for bona fide amusement purposes.[1]

Section 2.1(b)(2) provides that the "Game Room Permit Administrator" (specified elsewhere as the Van Zandt County Fire Marshal or his designated agent) shall collect an application fee of $1,000.00 at the time a permit application is submitted. Section 3.12(a) states, "It shall be unlawful for a Game Room to keep, exhibit, operate, display, or maintain any gambling device that is prohibited by the Constitution of this state or Chapter 47 of the Texas Penal Code, Gambling."

The Regulations additionally state that "[t]hese Regulations do not legalize anything prohibited under the Texas Penal Code or any other law(s) or regulation(s)," and specifically impose a civil penalty of up to $10,000.00 for operating, displaying, or maintaining a "gambling device" as prohibited by Chapter 47 of the Texas Penal Code. Operating, displaying, or maintaining a gambling device is also grounds for denial, revocation, or suspension of a game room permit.

Skill Zone, a business located in Van Zandt County and established in 2021, furnishes electronic machines on which adult individuals can play games, and which may provide cash prizes. Skill Zone asserts that the machines located on its premises are not "amusement redemption machines" as defined in the Regulations.

On or around June 16, 2022, Skill Zone received a letter from Curry, addressed to "All Game Room Owners or Operators in Van Zandt County." The letter stated that the County Commissioners Court "adopted an ordinance regulating game rooms within the County" and enclosed a copy of the County's application for a permit to operate a game room. The letter further read, in capital letters, "Please be advised that if you have not submitted your original Application within thirty days from today's date you are operating an unpermitted game room and are therefore subject to a $10,000.00 per day penalty." Skill Zone did not (and has not to date) file an application for a permit to operate a game room.

---

[1] We note that this definition is identical to the one contained in the Texas Local Government Code's subchapter discussing county regulation of game rooms, although Skill Zone challenges its use only in the Regulations. *See* TEX. LOC. GOV'T CODE ANN. § 234.131(2)(b) (West 2023).

Instead, on July 29, Skill Zone sued the County seeking, in relevant part, a declaratory judgment that Sections 1.4(a)(2), 3.12(a), and 2.1(b)(2) of the Regulations are invalid, unenforceable, and void. Skill Zone alleged that its suit "challenges the validity of an ordinance enacted by the County for which sovereign immunity is waived." On December 29, Skill Zone moved for partial summary judgment on its declaratory judgment claims. Subsequently, on February 24, 2023, the County filed a plea to the jurisdiction, arguing that the DJA did not operate as a waiver with respect to its right to governmental immunity from a suit because the statute containing the waiver language did not encompass "regulations" and because Skill Zone's claims were not ripe. The trial court conducted an oral hearing on both Skill Zone's summary judgment motion and the County's plea to the jurisdiction. Thereafter, the trial court entered an order granting the County's plea to the jurisdiction without specifying the grounds on which the trial court based its ruling.

On August 31, the trial court entered a final judgment dismissing Skill Zone's claims with prejudice. This appeal followed.

## STANDARD OF REVIEW

"An order granting or denying a plea to the jurisdiction is a question of law that is reviewed de novo on appeal." *City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015) (per curiam). When reviewing a trial court order dismissing a cause for want of jurisdiction, Texas appellate courts construe the pleadings in favor of the plaintiff and look to the pleader's intent. *Harris Cnty. v. Annab*, 547 S.W.3d 609, 612–13 (Tex. 2018). However, when a defendant challenges jurisdiction, a court is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). The jurisdictional inquiry may unavoidably implicate the underlying substantive merits of the case when the jurisdictional inquiry and the merits inquiry are intertwined. *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019). When, as in this case, the order sustaining a plea to the jurisdiction does not specify the grounds upon which the trial court relied, we must affirm if any of the independent grounds in the jurisdictional plea have merit. *See Kownslar v. City of Houston*, 654 S.W.3d 472, 478 (Tex. App.—Houston [14th Dist.] 2022, pet. denied).

3

Pleadings that fail to allege facts affirmatively showing jurisdiction, but which can be cured by amendment, indicate a lack of pleading sufficiency, and the plaintiff should be allowed to amend. *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839–40 (Tex. 2007) (noting that unless the pleadings demonstrate an incurable defect, plaintiffs should be given the opportunity to amend). However, where the allegations reveal an incurable defect and thus affirmatively negate the trial court's jurisdiction, a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.*; *Tabrizi v. City of Austin*, 551 S.W.3d 290, 303 (Tex. App.—El Paso 2018, no pet.).

## WAIVER OF GOVERNMENTAL IMMUNITY

In three issues, Skill Zone contends generally that the trial court erred in granting the County's plea to the jurisdiction, challenges whether seeking a declaration of the validity of a county regulation is sufficient to waive governmental immunity under the DJA, and argues the trial court erred if it granted the County's plea on the basis that Skill Zone's claims are not ripe for judicial review.

### Invocation of Waiver

We begin by addressing the County's contention that because the term "regulation" does not explicitly appear in the statutes which establish the DJA's waiver of governmental immunity (while the terms "statute" and "municipal ordinance" do), Skill Zone's challenge to the validity of select county regulations cannot invoke the waiver. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a).

#### *Applicable Law*

The plaintiff in any suit has the burden to affirmatively demonstrate the trial court's jurisdiction, and this burden includes establishing a valid waiver of immunity in suits against the government. *Swanson*, 590 S.W.3d at 550. Sovereign and governmental immunity are common-law concepts that generally protect the State and its political subdivisions from the burdens of litigation. *Annab*, 547 S.W.3d at 612. "Sovereign immunity protects the state and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts." *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58

4

(Tex. 2011) (citing ***Wichita Falls State Hosp. v. Taylor***, 106 S.W.3d 692, 694 n.3 (Tex. 2003)).[2] Sovereign immunity bars DJA actions against the state and its political divisions absent a legislative waiver. *See* ***Texas Dep't of Transp. v. Sefzik***, 355 S.W.3d 618, 620 (Tex. 2011); ***City of Austin v. Util. Assocs., Inc.***, 517 S.W.3d 300, 315 (Tex. App.—Austin 2017, pet. denied). Generally, a waiver of governmental immunity requires "clear and unambiguous" statutory language. ***Texas Off. of Comptroller of Pub. Accts. v. Saito***, 372 S.W.3d 311, 313 (Tex. App.—Dallas 2012, pet. denied) (citing TEX. GOV'T CODE ANN. § 311.034 (West 2023)).

In general, the DJA allows "[a] person … whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise" to "have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2023). The DJA does not enlarge the trial court's jurisdiction or provide a general waiver of immunity but provides a limited waiver for challenges to the validity of an ordinance or statute. ***Sefzik***, 355 S.W.3d at 621-22; ***McLane Co., Inc. v. Texas Alcoholic Beverage Comm'n***, 514 S.W.3d 871, 875 (Tex. App.—Austin 2017, pet. denied). "[I]f the Legislature requires that the State be joined in a lawsuit for which immunity would otherwise attach, the Legislature has intentionally waived the State's sovereign immunity." ***Wichita Falls State Hosp.***, 106 S.W.3d at 697–698. And "[f]or claims challenging the validity of ordinances or statutes … the Declaratory Judgment Act requires that the relevant governmental entities be made parties, and thereby waives immunity." ***City of El Paso v. Heinrich***, 284 S.W.3d 366, 373 n.6 (Tex. 2009). We note, however, that the DJA does not operate as a waiver for claims seeking a court's interpretation of a statute *unless* the plaintiff has also challenged the validity of the statute. ***Porter v. Montgomery Cnty.***, No. 09-15-00459-CV, 2017 WL 629487, at *3 (Tex. App.—Beaumont Feb. 16, 2017, no pet.) (mem. op.) (citing ***Sefzik***, 355 S.W.3d at 622).

---

[2] Courts often use the terms "sovereign immunity" and "governmental immunity" interchangeably even though they are two distinct concepts. ***Hyde v. Harrison Cnty.***, 607 S.W.3d 106, 109 n.3 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (citing ***Wichita Falls State Hosp. v. Taylor***, 106 S.W.3d 692, 694 n.3 (Tex. 2003)). Though the terms differ, the law gives these two immunities the same treatment as to the issues raised in today's case. *See id.* Thus, we cite cases involving sovereign immunity and cases involving governmental immunity without noting the type of immunity involved.

*Analysis*

Absent express waiver language, "Texas courts rarely conclude that the Legislature has waived governmental immunity. Still, the law recognizes the possibility and courts have found a waiver of immunity even when statutes lack express-waiver language." *Hyde v. Harrison Cnty.*, 607 S.W.3d 106, 112 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). The clear and unambiguous requirement "is not an end in itself, but merely a method to guarantee that courts adhere to legislative intent." *Grossman v. City of El Paso*, 642 S.W.3d 85, 103 (Tex. App.—El Paso 2021, pet. dism'd) (citing *Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 3 (Tex. 2000)). The Supreme Court of Texas has further cautioned, "the doctrine should not be applied mechanically to defeat the true purpose of the law." *Id.* "The polestar of statutory construction is legislative intent, which we determine from the enacted language." *In re Tex. Educ. Agency*, 619 S.W.3d 679, 687 (Tex. 2021). We seek that intent first and foremost in the plain meaning of the text. *Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015).

When deciding whether the Legislature clearly and unambiguously waived governmental immunity absent express-waiver language, the high court has further instructed courts to (1) consider "whether the statutory provisions, even if not a model of clarity, waive immunity without doubt;" (2) resolve any "ambiguity as to waiver ... in favor of retaining immunity;" (3) generally find waiver "if the Legislature requires that the governmental entity be joined in a lawsuit even though the entity would otherwise be immune from suit"; (4) consider whether the legislature "provided an objective limitation on the governmental entity's potential liability"; and (5) consider "whether the statutory provisions would serve any purpose absent a waiver of immunity." *Id.*; *Hillman v. Nueces Cnty.*, 579 S.W.3d 354, 360 (Tex. 2019).

The Texas Supreme Court has held that the DJA allows persons to sue to challenge the validity of ordinances or statutes, and because governmental entities may be bound by a court's declaration on those ordinances or statutes, they must be "joined in suits to construe their legislative pronouncements." *Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994). Specifically, *Leeper* describes the DJA as "authorizing declaratory judgment actions to construe the legislative enactments of governmental entities[.]" *Id.* And in *Texas Lottery Commission v. First State Bank of DeQueen*, the Texas Supreme Court cited *Leeper* in holding that the DJA may waive the immunity of an assortment of governmental entities. 325 S.W.3d 628, 634–35 (Tex. 2010) (DJA may waive immunity for, e.g., the Texas Lottery Commission, a state hospital,

and the Texas Natural Resources Commission). Moreover, the Texas Supreme Court found waiver of governmental immunity where plaintiffs asserted a DJA claim challenging the validity of "cosmetology statutes *and regulations*." **Patel v. Texas Dep't of Licensing & Regul.**, 469 S.W.3d 69, 77 (Tex. 2015) (emphasis added) (challenge to validity of "cosmetology statutes and regulations" sufficient to waive immunity for Texas Department of Licensing and Regulation and Commission of Licensing and Regulation); *see also* **Tabrizi**, 551 S.W.3d at 294 ("If [a] land use regulation is illegal or unconstitutional, a property owner may seek a declaration to that affect, which also overcomes immunity.").

Because the County would be bound by a court's declaration on the validity of its regulations, the DJA requires that the County be joined in a lawsuit challenging same. For this reason, and based upon the aforementioned guidance, we disagree that the DJA waives immunity only in actions challenging legislative enactments specifically termed "statute" or "ordinance."

**Scope of Waiver**

In its first and second issues, Skill Zone argues that it alleged sufficient facts to prove that its claims fall within the scope of the DJA's waiver of governmental immunity.

*Applicable Law*

"A plaintiff filing suit against a governmental entity must assert claims for which immunity has been waived and facts that fall within the scope of that waiver." **Ackers v. City of Lubbock**, 253 S.W.3d 770, 774 (Tex. App.—Amarillo 2007, pet. denied). A mere reference to a basis for waiver of sovereign immunity in a petition is not enough to confer jurisdiction; the reviewing court must examine the scope of the waiver and whether the allegations in the petition fall within the scope of that waiver. *See* **Nueces Cnty. v. Ferguson**, 97 S.W.3d 205, 217 (Tex. App.—Corpus Christi 2002, no pet.) (citing **State Dep't of Crim. Justice v. Miller**, 51 S.W.3d 583, 587 (Tex. 2001)). Therefore, "we must determine whether the claims raised in [Skill Zone]'s amended petition are ones for which sovereign immunity has been waived and, if so, whether [Skill Zone] has properly pled such claims so as to invoke jurisdiction in the trial court." *Id.* A plaintiff may overcome the bar of governmental immunity by alleging a facially valid constitutional claim. **Tex. A & M Univ. v. Starks**, 500 S.W.3d 560, 560–61 (Tex. App.—Waco 2016, no pet.). However, governmental immunity is *not* waived if a party's constitutional claims are "facially invalid." **Klumb v. Hous. Mun. Emps. Pension Sys.**, 458 S.W.3d 1, 13 (Tex. 2015); **City of Port Arthur v. Thomas**, 659 S.W.3d 96, 115 (Tex. App.—Beaumont 2022, no

pet.). Thus, to determine whether the trial court properly granted the County's plea to the jurisdiction, we must determine if Skill Zone's constitutional claim was facially valid. *See Abbott v. Mexican Am. Legis. Caucus, Tex. House of Representatives*, 647 S.W.3d 681, 698 (Tex. 2022).

Only where the validity of a law itself is questioned—not the actions a governmental unit took under the authority of that law—does the UDJA allow immunity to be waived. *El Paso Cnty. v. El Paso Cnty. Emergency Servs. Dist. No. 1*, 622 S.W.3d 25, 39 (Tex. App.—El Paso 2020, no pet.); s*ee Sefzik*, 355 S.W.3d at 622 ("Sefzik is not challenging the validity of a statute; instead, he is challenging TxDOT's actions under it, and he does not direct us to any provision under the UDJA that expressly waives immunity for his claim.").

*Sections 1.4(a)(2) and 3.12(a)*

Skill Zone alleged in its petition that Sections 1.4(a)(2) and 3.12(a) of the Regulations are invalid because they are contradictory.[3]  Specifically, Skill Zone argues:

> Section 3.12(a) of the Game Room Regulations makes it a violation to possess exactly what the Game Room Regulations state are to be regulated and permitted under Section 1.4(a)(2).  Section 3.12(a) provides that "it shall be unlawful for a Game Room to keep, exhibit, operate, display, or maintain any gambling device that is prohibited by the Constitution of this state or Chapter 47 of the Texas Penal Code, Gambling."  However … any machine that would meet the definition of "Game Room" in Section 1.4(a)(2) of the Game Room Regulations would also fall within the definition of a "gambling device" under the TEX. PENAL CODE § 47.01(4).  Therefore, Sections l.4(a)(2) and 3.12(a) of the Game Room Regulations contradict each other, are invalid, unenforceable, and void.

Skill Zone alleges on appeal that Sections 1.4(a)(2) and 3.12(a) are unconstitutionally vague (due to their allegedly contradictory nature) and are therefore invalid, "because it is impossible to decipher what devices Section 1.4(a)(2) of the Regulations seek to regulate."  Although a challenge to the validity of a regulation promulgated by a political subdivision of the State is generally one for which the Legislature has waived governmental immunity, we must also examine whether the facts alleged in the petition fall within the scope of the waiver.

We note that the definition of "game room" in the Regulations is substantially identical to the definition provided by the Texas Local Government Code in the subchapter governing

---

[3] When determining whether a law is unconstitutionally vague, we begin by presuming that the law is constitutional. *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003).  The party challenging the law's constitutionality has the burden of showing that it fails to meet constitutional requirements. *Id.*

county regulation of game rooms.  *See* TEX. LOC. GOV'T CODE ANN. § 234.131(2) (West 2023).
The definitions at issue are reproduced below.

| Regulations § 1.4(a) | TEX. PENAL CODE ANN. § 47.01(4) | TEX. LOC. GOV'T CODE ANN. § 234.131(2) (West 2023) |
| --- | --- | --- |
| [A] for-profit business located in a building or place that contains six (6) or more: … (2) electronic, electromechanical, or mechanical contrivances that, for consideration, afford a player the opportunity to obtain a prize or thing of value, the award of which is determined solely or partially by chance, regardless of whether the contrivance is designed, made, or adopted solely for bona fide amusement purposes. | "Gambling device" means any electronic, electromechanical, or mechanical contrivance not excluded … that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance. | [A] for-profit business located in a building or place that contains six or more: … (B) electronic, electromechanical, or mechanical contrivances that, for consideration, afford a player the opportunity to obtain a prize or thing of value, the award of which is determined solely or partially by chance, regardless of whether the contrivance is designed, made, or adopted solely for bona fide amusement purposes. |

Generally, a law is unconstitutionally vague if "the persons regulated by it are exposed to risk or detriment without fair warning or if it invites arbitrary and discriminatory enforcement." *Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 566 (Tex. App.—Tyler 2007, pet. denied).  That is, it may not be so vague and standardless as to leave a governing body free to decide, without any legally fixed guidelines, what is prohibited in each particular case.  *Pak-a-Sak, Inc. v. City of Perryton*, 451 S.W.3d 133, 137 (Tex. App.—Amarillo 2014, no pet.).  A law is not unconstitutionally vague unless it would "require people of common intelligence to guess at its meaning or there is a substantial risk of miscalculation by those whose acts are subjected to regulation."  *Canal Ins. Co.*, 238 S.W.3d at 566.  When faced with multiple constructions of a law, courts are directed to interpret the language in a manner that renders it constitutional if it is possible to do so.  *City of Houston v. Clark*, 197 S.W.3d 314, 320 (Tex. 2006).  Notably, Skill Zone does not argue that the definition given in Section 1.4(a)(2) is incomprehensible on its face, but rather contends that its meaning is unclear in conjunction with Section 3.12.

The Texas Local Government Code grants counties the authority to require that an owner or operator of a game room "obtain a license or permit … to own or operate a game room in the county."  TEX. LOC. GOV'T CODE ANN. § 234.134 (West 2023).  However, Section 234.140 provides that "[t]his subchapter does not legalize any activity prohibited under the Penal Code or other state law," and provides that operating a game room under a permit issued by a county in accordance with the subchapter is not a defense to prosecution under Chapter 47 of the Texas

Penal Code. *Id*. § 234.140 (West 2023). In its petition, Skill Zone contends that Section 234.140 serves as a limitation on the ability of the County's Commissioners Court to "enact[] an ordinance regulating game rooms that would regulate or permit anything that would otherwise be illegal under the penal code." Skill Zone further appears to allege that Section 1.4(a)(2) runs afoul of this supposed limitation. Chapter 234, Subchapter E of the Local Government Code clearly states that nothing contained within *the subchapter itself* renders legal any activity previously made illegal, and further clearly states that obtaining a county permit to operate a game room will not excuse illegal conduct as set forth in Chapter 47 of the Texas Penal Code. *Id*.. We do not locate in this section any limitation on a county's authority to enact regulations pertaining to game rooms, as alleged by Skill Zone.

Far from failing to provide "fair warning" of potential risk or detriment, the Regulations both reference and reinforce the preexisting bans on illegal gambling devices. Two facts may simultaneously be true without any inherent contradiction: (1) an establishment meeting the Regulations' definition of a "game room" may not legally operate within the County without a permit, and (2) some establishments considered "game rooms" under the Regulations may be in possession of illegal gambling devices. The definition given in Section 1.4(a)(2) plainly does not obscure or obviate the prohibitions (both in Section 3.12 of the Regulations and in Chapter 47 of the Penal Code) on possessing illegal gambling devices. Instead, the plain text of the Regulations specifies that they do not "legalize anything prohibited under the Texas Penal Code or any other law(s) or regulation(s)," and explains that "an individual's compliance with these Regulations, including operating a Game Room under a permit issued pursuant to these Regulations," is not a defense to prosecution for an offense under Chapter 47. Moreover, in our review of the Regulations as a whole, we find no provisions purporting to *allow* illegal activity. Section 3.12(a), in particular, restates as a county offense the prohibition set forth in Section 47.06 of the Penal Code, and Section 3.12(b) assigns a civil penalty for violating this prohibition, "regardless of whether the Game Room has a … permit or not." The plain language of the Regulations is clear that devices illegal under the Penal Code remain so and that receipt of a permit does not prevent liability for unlawful conduct. Accordingly, we conclude that Skill Zone has not alleged facts comprising a facially valid constitutional claim that would fall within the scope of the DJA's governmental immunity waiver, and the trial court did not err in granting the

County's plea to the jurisdiction as to Skill Zone's claim regarding Sections 1.4(a)(2) and 3.12(a). We overrule Skill Zone's first and second issues as pertains to this claim.

*Section 2.1(b)(2)*

Skill Zone contends that Section 2.1(b)(2) is invalid because the Commissioners' Court exceeded the enacting authority conferred by the Texas Local Government Code by adopting the maximum application fee of $1,000.00 without analyzing "the cost of processing the application and investigating the applicant." TEX. LOC. GOV'T CODE ANN. § 234.135 (West 2023). In support of this contention, Skill Zone alleges that it was "unable to locate any evidence that the County considered or analyzed the cost of processing an application and investigating an applicant" when setting the fee amount.

As a challenge to the validity of a regulation promulgated by a political subdivision of the State, Skill Zone's claim appears to be one for which the Legislature waived governmental immunity. *See Heinrich*, 284 S.W.3d at 373 n.6 (Section 37.004(a) waives sovereign immunity for statutory-validity claims). Although we may look to evidence in the record when a defendant challenges jurisdiction, the record evidence related to analysis by the County of the cost of processing a game room permit application and investigating the applicant is very limited. *See Swanson*, 590 S.W.3d at 550. Moreover, the evidence before us does not conclusively negate Skill Zone's allegations, as it remains unsettled exactly what degree of analysis Section 234.135 requires for a court to determine that a game room permit application fee is in fact "based on" the factors set forth therein.

For these reasons, we conclude that Skill Zone alleged a claim that is not automatically barred by the County's governmental immunity and sustain Skill Zone's first and second issues as to this claim. Thus, we proceed to address ripeness regarding Section 2.1(b)(2).

**Ripeness**

In its third issue, Skill Zone asserts that the trial court erred if it granted the County's plea on the basis that Skill Zone's claims are not ripe for judicial review. Having already found that governmental immunity bars Skill Zone's claims pertaining to Sections 1.4(a)(2) and 3.12(a), we only examine whether Skill Zone's remaining claim pertaining to Section 2.1(b)(2) is ripe for judicial review.

*Applicable Law*

Ripeness is a component of subject matter jurisdiction that focuses on a lawsuit's timing.

***Waco Indep. Sch. Dist. v. Gibson***, 22 S.W.3d 849, 851 (Tex. 2000) ("While standing focuses on the issue of who may bring an action, ripeness focuses on when that action may be brought."). Under the ripeness doctrine, courts must consider whether, at the time a lawsuit is filed, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote. ***Patel***, 469 S.W.3d at 78. Thus, the ripeness analysis focuses on whether a case involves uncertain or contingent future events that may not occur as anticipated or may not occur at all. [4] ***Id.*** To establish that a claim is ripe based on an injury that is likely to occur, the plaintiff must demonstrate that the injury is imminent, direct, and immediate, and not merely remote, conjectural, or hypothetical. ***Gibson***, 22 S.W.3d at 852. If a party cannot demonstrate a reasonable likelihood that the claim soon will ripen, the case must be dismissed. ***Robinson v. Parker***, 353 S.W.3d 753, 755 (Tex. 2011).

In actions where the harm alleged is future enforcement of a challenged regulation, the challenging party must similarly show that enforcement is "imminent or sufficiently likely." *See* ***Atmos Energy Corp. v. Abbott***, 127 S.W.3d 852, 856 (Tex. App.—Austin 2004, no pet.). A *perceived* threat of enforcement does not create a justiciable controversy. ***R.R. Comm'n of Texas v. CenterPoint Energy Res. Corp.***, No. 03-13-00533-CV, 2014 WL 4058727, at *3 (Tex. App.—Austin Aug. 14, 2014, no pet.) (mem. op.) (citing ***Mitz v. Texas State Bd. of Veterinary Med. Exam'rs***, 278 S.W.3d 17, 25 (Tex. App.—Austin 2008, pet. dism'd)).

*Analysis*

Skill Zone argues that its claim is ripe for adjudication, even though it never submitted an application for a game room permit, because applying for a permit and thereby incurring the fee would "require Skill Zone to untruthfully assert in a sworn government document that it operates illegal gambling devices when it does not." However, Skill Zone also asserts that it would only be required to submit an application "[t]o the extent the Game Room Regulations apply to [Skill Zone], which [Skill Zone] and the County disagree." And on appeal, Skill Zone maintains "it does not possess or operate devices that are subject to the Regulations" and that "[Skill Zone's] machines do not fall within Section 1.4(a) of the Regulations."

---

[4] "In determining whether a suit for a declaratory judgment presents a court with a ripe controversy … we have acknowledged that UDJA suits are often brought with an eye to future harm. To be sure, the often future-looking nature of UDJA suits does not remove the requirement that the court must have subject matter jurisdiction over the suit—that is, that the parties must have standing, and a ripe, justiciable controversy must exist… A plaintiff may very well present a court with a justiciable controversy when the plaintiff asserts that a live controversy exists and harm will occur if the controversy is left unresolved." ***Sw. Elec. Power Co. v. Lynch***, 595 S.W.3d 678, 685 (Tex. 2020).

Skill Zone cannot demonstrate that it *already* suffered a concrete injury because at the time this lawsuit was filed, it had not applied for a game room permit or paid the application fee of which it complains. *See **Gibson***, 22 S.W.3d at 851-52. Therefore, for its claim to be ripe, Skill Zone must establish that it is imminently *likely* to suffer a concrete injury (such as demonstrating that an enforcement action against it is imminent). *See **R.R. Comm'n of Texas***, 2014 WL 4058727 at *3.

We cannot conclude that Skill Zone affirmatively established that the failure to address its claim would constitute a hardship on Skill Zone. Receipt of more than one cease-and-desist letter from the entity tasked with enforcing applicable regulations, where the letters specifically allege that the recipient is in violation of said regulation, may be sufficient to establish that enforcement is imminent or sufficiently likely. ***Mitz***, 278 S.W.3d at 25. In ***Mitz***, the claims of certain unlicensed practitioners of equine dentistry were found to be ripe when the practitioners "received two cease-and-desist orders, participated in an informal settlement conference, and [were] informed that the Board will refer the case to [the State Office of Administrative Hearings] for a contested case hearing." *Id.* at 26. At the time this lawsuit was filed, the only communication Skill Zone received from the County regarding the Regulations was Curry's letter generally notifying it of the enactment of the Regulations and the potential penalty for operating an unpermitted game room. The evidence of forthcoming enforcement here is significantly less than that presented in ***Mitz***. Curry's letter did not accuse Skill Zone of noncompliance or suggest that any enforcement action against Skill Zone was under consideration. And while we may consider intervening events that occur after a decision in the lower court, Skill Zone has not presented any evidence that the County issued any warnings or instituted any enforcement action since the trial court dismissed Skill Zone's claims. *See **Perry v. Del Rio***, 66 S.W.3d 239, 250 (Tex. 2001).

Indeed, although Skill Zone notes correctly that there is no requirement that a law actually be enforced against a claimant before a challenge thereto may be ripe, Skill Zone's own assertions that the Regulations do not apply to it would appear to belie a finding that the threat of injury is anything more than speculative. *See **Patel***, 469 S.W.3d at 78. In ***Patel***, the Supreme Court of Texas found that the DJA claims of two co-owners of an eyebrow threading salon and an unlicensed eyebrow threader were ripe for adjudication, although no enforcement actions had commenced against them. *Id.* However, the Court found that these parties demonstrated a

sufficient likelihood of imminent injury because the record showed that 1) another salon owned by one co-owner already received warnings; and (2) two of the unlicensed threader's co-workers already received warnings. *Id.* ("Because at the time the lawsuit was filed Chamadia was performing threading services without a cosmetology license and Patel and Satani were employing threaders who did not have cosmetology licenses, these individuals were subject to a real threat of likely civil and criminal proceedings").

Conversely, throughout this case, Skill Zone has maintained that its business is not encompassed by the definition of "game room" given in Section 1.4(a). If Skill Zone is *not* a game room as defined in the Regulations, then it lacks any obligation to submit a permit application. Neither has Skill Zone asserted any intent to apply for a game room permit in the future. *See **City of Houston v. Student Aid Found. Enterprises***, No. 14-09-00236-CV, 2010 WL 2681706, at *2 (Tex. App.—Houston [14th Dist.] July 8, 2010, no pet.) (party's claim challenging zoning variance ordinance not ripe because party alleged no intent to sell or build on affected property). Therefore, it would not be in danger of incurring the allegedly unlawful application fee set forth in Section 2.1(b)(2), because any obligation to pay the fee is contingent on the submission of an application for a game room permit.[5] *See **Gibson***, 22 S.W.3d at 852-53 (claims challenging student promotion policies were not ripe because student retention was contingent on standardized test performance). While the threat of harm may constitute a concrete injury, "the threat must be direct and immediate rather than conjectural, hypothetical, or remote." ***Waco Indep. Sch. Dist.***, 22 S.W.3d at 852. Because its alleged injury remains contingent, Skill Zone's claim is not yet ripe for review. We overrule Skill Zone's third issue.

## LEAVE TO AMEND

If the pleadings lack sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not reveal incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the trial court should afford the plaintiff an opportunity to amend. ***Texas Dept. of Parks & Wildlife v. Miranda***, 133 S.W.3d 217, 226-27 (Tex. 2004). If, however, the pleadings affirmatively negate jurisdiction, the trial court may grant the plea to the jurisdiction without allowing an amendment. *Id.* at 227. In determining whether leave to amend should be

---

[5] Moreover, if Skill Zone is not a game room obligated to obtain a permit to operate lawfully within the County, it would not be answerable for any penalties under the Regulations for operating its business without a permit.

granted in a case involving governmental immunity, a court may also consider "[i]f a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity." *Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004).

Because we find that Skill Zone's DJA claim alleging that Sections 1.4(a)(2) and 3.12(a) are unconstitutionally vague is facially invalid, we conclude that Skill Zone's pleadings conclusively negate the existence of subject-matter jurisdiction over this constitutional claim. Further, amendment of Skill Zone's pleadings as to this claim could not allege facts that would constitute a waiver of immunity and invoke jurisdiction. *See Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 486 (Tex. 2018). We will not afford Skill Zone an opportunity to replead this claim.

Moreover, because Skill Zone's claim challenging Section 2.1(b)(2) is not ripe, the trial court lacked subject matter jurisdiction over the action. But aside from the claim not being ripe for judicial review, the petition does not affirmatively establish a complete lack of jurisdiction over this claim. Thus, the pleadings related to this claim do not demonstrate an incurable defect in jurisdiction and Skill Zone should be given an opportunity to amend as to its claim challenging Section 2.1(b)(2) before said claim is dismissed with prejudice.

## DISPOSITION

Having determined that Skill Zone's claim seeking a declaratory judgment regarding Section 2.1(b)(2) of the Regulations is not ripe for judicial review but that Skill Zone should be allowed an opportunity to amend, we *reverse* the trial court's order granting the County's plea to the jurisdiction as to Skill Zone's Section 2.1(b)(2) claim, and *remand* that claim to allow Skill Zone the opportunity to amend its pleadings and for further proceedings consistent with this opinion. In all other respects, we *affirm* the judgment of the trial court.

BRIAN HOYLE
Justice

Opinion delivered March 28, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 28, 2024**

**NO. 12-23-00231-CV**

**SKILL ZONE USA, LLC,**
Appellant
V.
**VAN ZANDT COUNTY, TEXAS,**
Appellee

---

Appeal from the 294th District Court
of Van Zandt County, Texas (Tr.Ct.No. 22-00088)

---

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this Court that the judgment of the court below should be affirmed in part, and reversed and remanded in part.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's order granting the County's plea to the jurisdiction be **reversed** as to Skill Zone USA LLC's Section 2.1 (b)(2) claim, and that the case be **remanded** to allow Skill Zone the opportunity to amend its pleadings as to that claim.

It is further ORDERED, ADJUDGED and DECREED that the order of the court below is **affirmed** in all other respects.

It is further ORDERED that each party bear their own costs in this cause expended in this Court; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*